Kent, Ch, J.
delivered the opinion of the court. The material and important question presented by the bill of exceptions is, whether a bona fide purchaser, without notice, under a sale duly made according to the statute, by virtue of a power contained in a mortgage, can protect himself against the allegation of usury in the debt for which the bond and mortgage were given. The statute (sess. 24. c. 146.) authorizes and regulates the sale under such a power; and requires it to be at public auction on six months’ notice, and declares that it “ shall not be defeated to the prejudice of any bona fide purchaser thereof in favour, or for the benefit, of any person claiming the equity of redemption.” The statute accordingly renders such a sale equivalent to a foreclosure and sale under a decree in chancery; and it would be against the policy and principles of law, as well as the plain language of the statute, to allow the sale in this case to be defeated. It is true that the statute of usury (sess. 10. c. 13.) declares all “ bonds, bills, notes, contracts and assurances” infected with usury “ utterly void and so are the adjudged cases, when the suit at law is between the original parties, or upon the very instrument infected. But when the contract has been changed by a new contract founded upon if, in which an innocent person was a party, the usury has not been permitted to be set up. Thus in the case of Cuthbert v. Hales, (8 Term Rep. 390.) where A. made an usurious note to B., who transferred it to C. for a valuable consideration, without notice of the usury, and A., thereupon, gave a bond to C. for the amount, the bond was held not to be affected by the usury. And Lord Kenyon observed, in that case, that if the defence “ were to succeed, it might affect most of the securities in the kingdom; for if, in tracing a mortgage for a century past, it could be discovered that usury had been committed in any part of the transaction, though between .other parties, the consequence would be that the whole would be void. It would be a most alarming proposition to the holders of all securities.” The same doctrine was early advanced in the case of Ellis v. Wares, (Cro. Jac. 33. More, 573. Yelv. 47.) which arose under the usury statute of 13 Elis, containing the same words as our set. The defendant there was indebted to *198 Alder in 100l. on an usurious contract, and Alder was indebted the plaintiff in 1001. of just debt, and the defendant, for the paynient of the usurious debt to Alder, joined with Alder in a bond f° 1001. to the plaintiff, and the bond was held good, because the debt to tiie plaintiff was a just debt, and he was ignorant of the usury, and the court said “ for as on the one side it may be said to be the means to defraud the statute, so on the other side it may be a greater mischief to a true creditor, when he shall take security by way of bond with sureties for money, if it should be examined whether there were any corrupt agreement betwixt the creditor and bis surety, whereof he cannot by. intendment have any conusance.” This same doctrine was recognised by Lord Holt, in Hussey v. Jacob, (1 Ld. Raym. 87. Salk. 344.) as applicable equally to gaming and usurious contracts.
The case of Lowe v. Waller, (Doug. 736.) was an action brought by an innocent holder upon the very bill of exchange given on an usurious consideration, and the court of K. B. felt themselves bound, though with visible regret, by the peremptory words of the statute, and by the case of Bowyer v. Bampton, (2 Stra. 1155.) which was on a gaming note under the statute of 9 Ann. and which equally declares the security void. This is the greatest ' length to which the courts in England have gone to the prejudice of an innocent person; and there the suit was necessarily and directly on the usurious instrument. In the present case the defendant holds under a new contract, founded on a sale by statute, and one which the statute expressly declares to be a bar to all equity of redemption. There is no case precisely like this in the English books, because these powers 'are. not in use in Great Britain, but the cases which have been referred to of new security taken by an innocent person, founded on the usurious contract, are very analogous in principle, though this is much the stronger case, because here is a statute sanction to the purchase, rendering it a substitute to a judicial sale under a decree.
The notice given by the advertisement is intended for the party, as well as for the world, and he has an opportunity to apply to chancery, if he wishes to arrest the sale on the ground of usury; and the statute likewise gives him his remedy by action. If he stands by and suffers the sale to go on, and an innocent party to purchase, unconscious of the latent defect; and without any means of knowing it, the purchaser has the preferable claim in equity to protection.
*199 The principles of public policy, and the security of titles, are deeply concerned in the protection of such a purchaser. If the purchase was to be defeated by the usury in the original contract, it would be difficult to set bounds to the mischief of the precedent, or to say in what sequel of transactions, or through what course of successive alienations, and for what time short of that in the statute of limitations, the antecedent defect was to be deemed cured or overlooked, so as to give quiet to the title of the bona Jide purchaser. The inconvenience to title would be alarming and enormous. The law has always had a regard to derivative titles', when fairly procured; and though it may be true, as an abstract principle, that a derivative title cannot be better than that from which it was derived, yet there are many necessary exceptions to the operation of this principle. At common law, sales in market overt gave a title to stolen goods ; and in the case of fraudulent conveyances, which the statute of 27 Elis, declares to be “ utterly void,” it has been a long and well settled principle, that a purchaser for a valuable consideration, without notice, has a good title, though he purchases of one who had obtained the conveyance by fraud. The fraud cannot be set up to defeat such a title. (Rodgers v. Langham, 1 Sid. 134. Doe v. Marly, 4 Bos. & Pull. 332. Fletcher v. Peck, 6 Cranch, 133.) There • is a provision to this effect in the statute of 27 Elis. (which we have adopted,) and that statute was only in affirmance of the common law.
The court are accordingly of opinion that the verdict must be set aside, and a new trial awarded, with costs to abide the event of the suit.
New trial granted.