On the trial at Guilford on the spring circuit of 1837, before his Honor, Judge Dick, the plaintiff to establish title in his lessors gave in evidence a deed duly executed by the defendant, Daniel Hauser and Elizabeth Lash of the one part, and the said Emanuel of the other, bearing date 2 April, 1831, whereby it was witnessed that in consideration of five dollars paid by the said Emanuel to the said Daniel and Elizabeth, and also in consideration of the matters thereinafter recited, the said Daniel and Elizabeth bargained and sold the land in controversy *Page 177 
to the said Emanuel, to have and to hold to him, his heirs and assigns forever, upon the special trust and confidence thereinafter declared. The indenture proceeded to declare this special trust and confidence to be that, whereas, on the day of the date the said Daniel and Elizabeth had executed their bond to Charles F. Bagge for the sum of $1,200, payable two years after date, with interest from the date, payable annually; if the bond should not be paid when it became due, or the annual interest thereof should not be paid as stipulated, the said Emanuel, at the request of the said Charles, should sell the land at public sale, and after paying off, by the proceeds of such sale, the debt aforesaid, and retaining a reasonable compensation for his services, account for and pay (224) over the residue of the proceeds to the said Daniel and Elizabeth; and if the said Daniel and Elizabeth should pay off the said debt in any other way, then the said Shober should convey the said land to the said Daniel and Elizabeth and their heirs, or to that one of them and his or her heirs who should thus pay it off; and furthermore it was covenanted by the said deed that until a sale should be made as aforesaid, the said Daniel and Elizabeth should retain the possession of the land. The plaintiff further proved that in pursuance of the stipulations of this deed of trust the land was duly sold by Shober and bought by Salathiel Stone, the other lessor; and exhibited in evidence a deed from the said Shober to the said Stone effectual in form to convey the land. The defendant acknowledged himself in possession, but contended that the plaintiff was not entitled to recover, because, as he averred, the deed of 2 April, 1831, was utterly void, it having been made as an assurance or part and parcel of an assurance for the payment of money loaned by the said Bagge unto the bargainors in said deed, or one of them, at an usurious rate of interest.
Upon the evidence it appeared that at the request of the defendant the trustee Shober had applied to Bagge to borrow the sum of $1,000; and being informed by Bagge that he was not then in funds Shober shortly thereafter communicated this information to the defendant, who then requested him to say to Mr. Bagge that if he would make the loan of $1,000, the defendant would become responsible for two bonds of his father, Christian Hauser, held by Bagge; thereupon Shober applied again for the loan and delivered this message, when Bagge informed him that he was then in funds, and would lend the money. A short time thereafter the defendant and Bagge came to Shober; the two bonds of the defendant's father, on which there was due two hundred dollars for principal and interest, were given up by Bagge, and the thousand dollars lent, a bond for the sum of $1,200, payable two years after date, with interest from the date, was executed by the defendant and Elizabeth Lash, and the deed hereinbefore referred to was also drawn up by *Page 178 
(225) Shober at the request of the parties, and executed as a further security. It was in evidence also that at this time the defendant was in good credit, was engaged in negro speculations, and that his father, the said Christian, was in his service — that Bagge was an old friend of the said Christian — that the said Christian was supposed to be embarrassed, if not insolvent, and his property was covered by fraudulent alienations to his friends, so that his creditors could not readily reach it — that a few months after this transaction he confessed judgment to the defendant, without any evidence of debt, for $120 — that at the instance of the said Christian, executions were levied upon property of the said Christian, and that at the sale under these executions every article of property was bid off at a single bid by the defendant, except one article, which was bid off by the said Christian's son-in-law — that the said Christian seemed always to have the means of paying debts which he chose to pay, and that in August and November, 1831, the said Christian became surety for the defendant in his purchases of negroes, and that the defendant then represented him as perfectly solvent and worth at least three thousand dollars.
Upon this evidence his Honor charged the jury that if from the evidence they believed that Christian Hauser, at the time of the loan to defendant, was insolvent, or even in doubtful circumstances, and it was any part of the motive with Bagge in making the loan to secure the debt from said Christian, the transaction was usurious, the bond and deed void, and they should find a verdict for the defendant. The jury found a verdict for the defendant; the plaintiff moved for a new trial because of misdirection to the jury. The new trial was refused and judgment rendered for the defendant, from which the plaintiff appealed.
This case was argued at length at the last term by
and after an advisari until the present term, the opinion of the Court was delivered by
The plaintiff had no claim to recover except upon the demise of (226) Salathiel Stone. There was no evidence of title in Bagge, and if Shober ever had any legal estate it passed by his conveyance to Stone. The correctness of the instruction is therefore to be considered in reference to his demise.
In the argument of the case several questions of law were discussed, which heretofore have not been decided in the courts of this State. As *Page 179 
well on this account as because of their importance to the community they have been considered by us very deliberately.
On the part of the plaintiff it was contended that, admitting the debt referred to in the deed to have been tainted with usury, and therefore the bond and the trust to sell for payment of the debt void, yet the deed passed the legal estate to Shober. In support of this position it was argued that the statute avoids "bonds, contracts and assurances for payment of any money to be lent upon usury; that a court of equity, which looks upon the conveyance of the legal estate as formal only and considers the trusts declared as the substance of the conveyance, and which has jurisdiction of trusts and is competent to decide on their character, might pronounce the deed, to the extent of these trusts, a mere security, and as such set it aside upon payment of what was equitably due; but that at law the conveyance is absolute — contains no provision whereby the estate thereby granted is to return to the bargainors on payment of the money lent, and therefore it is not in the contemplation of a court of law an assurance for the payment of money" avoided by the statute. It seems to us that this argument could not be answered if, in determining what is an "assurance" prohibited by the statute, we are to be governed by the form of the instrument, and are not at liberty to look into the purposes designed to be accomplished by it. In form the deed is a bargain and sale from Hauser and Lash to Shober, and they are the only parties to it. The sum of $5, thereby acknowledged to have been received from Shober is the consideration of the sale, and raises an use to Shober, which draws after it the entire legal estate. But in truth there was no consideration passing from Shober. It was not a sale to him, or to any other person, and if the pretended bargainors be at liberty to aver and to show this fact, then no use was raised to Shober, and of course, no estate passed by the deed. They show that the deed (227) was a part of a plan between Bagge, the lender, and Hauser and Lash, the borrowers, of a sum of money, by which through the medium of a sale to be made by Shober in case the borrowers did not pay the money, its payment might be assured to the lenders. They show that, in fact, it was intended as a security, executed as a security, operated as a security, and was not intended nor executed, and therefore, they insist, ought not to operate for any other purpose. The statute denounces all assurances for the payment of money loaned on an usurious contract, and is entitled to receive from every court, not ostensible but real obedience. It must be, therefore, so expounded as to render it efficient of the objects for which it was enacted. It is the duty of courts to look not merely at the words, but at the substance of the transaction; on the one hand not to be governed by the words, if the substance go to defeat the provision of the statute; and on the other, *Page 180 
not to rely on the words as to defeat the contract, if in substance the transaction be legal. The statute meant to put it in the power of every borrower to impeach every contract made on usurious terms, and to treat as utterly void, whatever assurance he may have made for performing that contract. Whatever may be the form of the contract — or the form of the assurance for compelling its execution, he is not estopped from averring the usury. He has averred it here, and if he has established his averment — the necessary consequence seems to be that the deed itself is void; and if void, no estate passed thereby.
It is a common remark that courts of law do not notice trusts. Certainly they do not for the purpose of administering them, for this is the peculiar function of courts of equity. But all courts must notice the legislative will duly expressed, and therefore deny validity to what that will, for any cause, denies a legal existence. Suppose a conveyance made of land or goods, and upon the face of it, it is declared that the same is made in trust that the bargainee shall sell the property and pay himself the sum of money therein recited to be advanced as the consideration thereof, with ten per cent interest thereon, and return the surplus to the bargainer. Can it be possible that with this corrupt agreement (228) staring them in the face a court of law must hold the conveyance good, and leave the validity of the trust to be examined by a court of equity? It is immaterial how the illegal purpose is manifested, whether by way of trust or covenant, or collateral engagement; the moment that illegal purpose is judicially ascertained, the penalty of the law attaches to the denounced transaction. Thus conveyances made with intent to defraud creditors or purchasers are, as against them, avoided by statute. Now if this intent appear not in the conveyance of the legal estate, but in the trusts for the grantor thereby declared, or by secret trusts for the grantor, a court of law looks through the formal parts of the conveyance to the object intended to be accomplished; and because of these trusts, declares the conveyance itself void, and holds the property, notwithstanding that conveyance, to be the property of the grantor — so a capacity is given by our laws to religious societies, of holding property conveyed to them for the benefit of the society. But if a conveyance formally so made is discovered to have been made upon a secret trust for others, a court of law, because of that trust, pronounces the conveyance itself void. Trustees v. Dickinson, 1 Dev., 190. In ascertaining what is a "security for the repayment of money" within the statute, the same great rule is to be observed which has been established for determining what is a "loan of money" under the statute; get at the nature
and the substance of the transaction, according to the true intent of the parties. And therefore it is that there is no instrument whatever, claiming to operate merely by the assent of the parties thereto, which may not be *Page 181 
impeached at law for usury. Fines, feoffments, grants, leases, although in form executed contracts, may be averred to have been executed as assurances or securities upon usurious agreements; and upon such averment being established, are as much avoided thereby as bonds, covenants, notes, or other contracts executory in form, are avoided by the plea of usury. Burton's case, 5 Co. Rep., 69; Fermon's case, 4 Co. Rep., 79;Dodd v. Ellrington, Rall's Rep., 31, p. 18; Co. Lit., 36, 4a. In spite of every effort of the courts to carry into complete effect the legislative will, no doubt the true character of usurious securities is very frequently concealed under cunning contrivances; but when that (229) character is seen, whatever may be the contrivance, the court must and will act upon the transaction such as in truth it is. The cases which have been cited by the plaintiff's counsel, do not profess to be decided upon any other principle. In the case of Doe v. Chambers, 4 Camp., 1, the lessors of the plaintiff, who were the assignees of the bankrupt, Trustram, claimed title to the premises under a building lease for 53 years, which had been made to the bankrupt, and the defendant resisted the recovery by showing an absolute assignment of that lease to him from the bankrupt. The assignees insisted that this assignment was void because made to secure the payment of money lent at usurious interest. They showed that the assignment was made in consideration of the sum of £ 900 advanced by the defendant to the bankrupt; that at the time of the assignment an underlease for seven years, at the rent of £ 70 a year, was executed by the defendant to Trustram, with a covenant of the defendant to reassign in case Trustram should repay the $900 at any time within the seven years, and with covenants on the part of Trustram, to insure the premises, keep them in repair, and pay the ground rent and taxes. And they further showed that this assignment and under-lease were made in pursuance of an agreement at the time the money was advanced. If the position taken by the plaintiff's counsel be correct there was no ground upon which the assignment could be declared void at law. It was on its face absolute. Connected with the under-lease there was yet no provision by which the assignment was defeasible, and the term assigned directed to revest on the payment of the money advanced. There was no bond, covenant, or other engagement on the part of the assignor for the repayment of the money advanced. The covenant of the defendant in the under-lease only made him responsible in damages if he did not reassign upon payment of that sum. Yet the assignment was held to be void, because it was, according to the intention of the parties, asecurity for the repayment of £ 900, lent at the usurious interest of £ 70 per annum. In the language of the court the question was, "whether this transaction was a contrivance to receive usurious interest for the loan of money. Therefore if assignment was *Page 182 
(230) intended as a security for the advance, and not as a purchase of the lease, it is void." Again, "the defendant advanced money by way of loan; and it was in the contemplation of the parties that thisshould be repaid; it was never put in hazard; and interest above the rate of 5 per cent was to be paid for the forbearance. The assignment executed in pursuance of this agreement is therefore void, and the legal estate is in the assignees of the bankrupt." It is true that the very learned judge remarks that the "assignment and the under-lease are parts of the same agreement, and the whole must be received together; and that without the covenant to reassign, the transaction could not be set aside in a court of law as usurious. It might be a very hard bargain, and a court of equity might grant relief, but the assignment would be sufficient to vest the legal estate in the defendant." In other words — if the transaction were in truth what, from looking at the assignment alone, it would seem to be, a sale out and out, a court of law could not pronounce it void, because then there would be no pretense for holding it a security. But the covenant to reassign contained in the under-lease, showed that it was in the contemplation of both parties that the money advanced should be paid — and therefore, according to the intention of the parties, the assignment was a security for the repayment of money advanced on a loan at usurious interest. The case of Doe on demise of Grimes v. Gooch, 3 Barn. and Ald., 664, was exceedingly like this. It was the case of an assignment of a lease from a debtor on one day and a reassignment at an increased rent on the day following with a stipulation that the original assignor might on six months notice repurchase the lease, and it was left to the jury to say whether the transaction was in truth a purchase and a lease from the purchaser, or only a security upon a loan. The jury found it to be the latter, and the loan usurious, and the assignment void.
On a motion for a new trial the court refused it, saying the true question is, Was this a purchase or a loan? If the latter was the case, then whatever might be the form given to it by the parties, it will not vary the real nature of the transaction, nor prevent it from being usurious. The same distinction has been taken in an old case, that of Cotteral v. Harrington, Brownlow, 180, which is noticed in most of the elementary (231) treatises. In a replevin the defendant avows under an annuity (a rent charge) for £ 20 granted for years, payable on demand, and alleges a demand. The plaintiff demands oyer of the deed, and by the deed it appears that for £ 110, one rent of £ 20 was granted for eight years, and another of £ 20 was granted for two years, if E, R, and I should so long live; the plaintiff pleads the statute of usury and sets forth the statute and a special usurious contract. Per Curiam: "If it had been laid to be upon a loan of money, then it was usury; if it be a bargain for *Page 183 
an annuity, it is no usury; but this was alleged to be upon a lending." It is difficult, if not impossible, we admit, to reconcile all that was said by the learned judges who decided the case of Den v. Dodds, 1 Johns. Cases, 158, and Flint v. Shelden, 13 Mass. 443, with the doctrine laid down in the cases just examined, and which we believe to be the true doctrine applicable to this subject; but the principles on which these decisions profess to be bottomed are not at variance with it. The former, Den v.Dodds, whether well or ill decided, proceeded avowedly upon two grounds: the first, that the conveyance there under consideration was made, not contemporaneously with the illegal loan, nor for the purpose of assuring the payment of money borrowed, but was made after the day of payment had passed and in satisfaction of antecedent debts; and secondly, that some of the debts were free from the taint of usury. Flint v. Shelden was determined upon what was alleged to be the settled construction of the Massachusetts statutes — that parol evidence should not be received of an illegal trust to impeach an absolute conveyance. And it is manifest that the decision would have been otherwise if the instrument in that case had been in its terms substantially a security.
Now, independently of the parol evidence in this case, no one can look at the deed before us and not see that the sole object contemplated by it was the securing of the debt therein mentioned. It recites a bond of the same date executed to secure payment of money advanced. Until and unless there shall be failure in paying that bond, the bargainors are to retain the possession. The possession is to be yielded only after such failure, and a demand of the creditor that the property (232) pledged be sold to pay the debt. If the debt be paid without a sale the trustee is to reconvey to the bargainors. If the land be sold, all the proceeds remaining after payment of the debt and the expenses of the sale are to be paid over to the bargainees. If such a deed be not in law a security, then the enactments of the statute against usurious assurances would seem to amount to but legislative trifling. Deeds of this character have been regarded with much suspicion and distrust, as a species of irredeemable securities or mortgages rendered absolute without foreclosure. If we add to this quality the privilege of exemption from the legal penalties of usury they will become invaluable to the extortioner in enabling him to take from his needy neighbor "all that he hath."
It has been further insisted on the part of the plaintiff that if the deed of trust can be regarded as a security, and therefore void or voidable if set up by Shober, yet that after a sale has been made under it and a conveyance executed to the purchaser, it ceases to be a security, and the title of the purchaser cannot be impeached because of usury in the original transaction. To this position we are unable to give our assent. We take the rule of law to be that every contract which is founded in usury, and *Page 184 
every security given to carry such contract into effect, is ipso facto void; and neither that contract nor that security can be rendered valid by the subsequent act of the parties. It matters not whether the contract has been carried into execution — the usurious contract and the usurious security are extinct at their very inception. We also take the law to be settled that a stranger must take heed to his assurance at his peril; and cannot set up his ignorance of the corrupt contract in support of a claim or title derived under a security which originated in usury. The plaintiff's counsel contends that although the rules of law have been usuallyso laid down, nevertheless they must be understood as not quite so rigid and inflexible. He urges that the usurious contract and security are not absolutely void, but voidable only; for that when an action is brought thereupon, the borrower must aver the usury; and if the form of action permit, he must aver it by special plea, or he is forever (233) concluded; moreover, that if the borrower pays the usurious debt he cannot recover it back, as money had and received; which he ought to be permitted to do, if the contract were utterly void. It does not follow that a contract is merely voidable, and not void, because the rules of pleading require that the matter, by reason whereof validity is denied to it, should be brought legitimo ordine to the notice of the court. The great object of the rules of pleading is to apprise the adverse party of the ground of defense so that he may be prepared to contest it, and may not be taken by surprise. Some of the distinctions made by these rules are very subtle, and the reasons for them are not always obvious. Thus it is laid down that where a bond is void at common law ab initio, the defendant may give such matter in evidence under the general issue, but where it is void ab initio by reason of a statute, such matter should be pleaded specially, and Whelfdale's case, in 5 Coke, is cited as authority for the position. Yet it is certain that in many cases, the defendant is not permitted upon the general issue to go into evidence to show a bond void because of illegality at common law (see Chitty's Rep., 1154, and Cotton v.Goodrich, 2 Black, 1108), and equally certain that he has been permitted thus to show it void by an act of Parliament, Thompson v. Rock, 4 Man. and Sel., 399. There is, however, an acknowledged propriety in requiring a plea of usury to a specialty. The corrupt contract ought to be particularly set forth, and the usurious interest, that the party may know what to answer. The party against whom it is pleaded may be aware of the contract, but he cannot otherwise know in what particulars it is meant to be assailed or wherein the other side imputes vice to it. Hill v. Montague, 2 Man. and Sel., 337. Nay, there appears to be good reason in the doctrine, although it has been doubted that a specialty cannot be avoided because of usury appearing in the condition, but the facts must be pleaded and the defendant cannot demur; for *Page 185 
peradventure the plaintiff may show that the apparent usury was by mistake, and there was no corrupt agreement between the contracting parties, Buckleyv. Guildbank, Cro. Jas., 678. That the party shall be concluded from afterwards averring usury, if he will not do it when he has an opportunity of bringing it forward by plea, establishes no more (234) than that the law requires of every man to make defense in due order and apt seasons, and that after a judgment is rendered, he is precluded from availing himself of any pre-existing matter which might have been set up as a bar to the recovery. If a man will not plead to a forged bond or one utterly void by reason of fraud, he cannot after judgment rendered aver the forgery or fraud for relief — Transit in remadjudication. Yet such is the solicitude of courts to carry the enactments of the statute into full execution, that when a judgment has been entered up by confession, and execution thereon issued, even after time asked and given, they will regard such a judgment in the nature of an assurance given by the borrower; set aside the execution; vacate the judgment, and order the warrant of attorney to be delivered up and cancelled on the ground of usury, without compelling the party to pay what is equitably due. Their language is, "we cannot impose such terms; the instrument is void; it is not good at law." Roberts v. Goff, 4 Barn. and Ald., 92. The inability of the borrower to recover from the lender money actually paid upon an usurious contract does not result from the contract being voidable and not void. If it were voidable only, then by the payment he confirmed the contract and could not recover the usurious excess, which he certainly may. The contract is absolutely void. The apparent creditor has no right to a cent of it — but he may, with a clear conscience keep what was in conscience due to him; and if the borrower has voluntarily paid that, thenvolenti non fit injuria.
It has been said that the sale in this case to Stone cannot be distinguished from one in which the title would be good, as where a borrower executes a letter of attorney authorizing the lender to sell property in payment of the usurious debt, the vendee's title would not be affected by the usury. If it would not it is because, in that case, the vendee would derive title directly from the borrower, and if he be a stranger to the usury, he sets up no claim under an usurious security. But in this case it was indispensable for the vendee to show title in his immediate vendor, for if the latter had none he could confer none — and he had no title if the law annulled the conveyance to him, because it was tainted with usury. If indeed Stone had required of the defendants to join (235) with the trustee in the conveyance, then he would have been in a situation analogous to that supposed — then he might have made title directly from the defendants upon a new and distinct contract between him and them, and this contract being free from illegality his title under *Page 186 
it would have been valid. But a mere derivative title cannot be better than that from which it is derived, and according to our opinion upon the first question nothing passed by the deed from the defendants to Shober, if that deed was a collateral security for the payment of an usurious debt. The case of Jackson on dem, of Bartlett v. Henry, 10 John., 185, has been passed upon us as a decision in point. There are several observations to be found in the opinion delivered in that case, which considered per se would seem favorable to the purpose for which the case has been cited. In that opinion the decisions in Cuthbert v. Haley, 8 Term, 390; Ellis v. Wares, Cro. Jas., 33, and Hussey v. Jacob, 1 Ld. Ray., 18, are quoted with approbation, in which it was held that if the maker of an usurious note executed a bond for the amount to an indorsee of the note, who had received it for valuable consideration, and without notice of the usury, the bond is not affected by the usury between the maker and the payer of the note. Assuredly, it is not, for the bond is a new
contract between the borrower and a third person, and is wholly untainted by any corrupt agreement. But can the lender, or the trustee of the lender, by any sale or assignment, make that good and effectual which was unlawful and void in its inception? It is further remarked in the opinion referred to, that in the construction of the statute of 27 Eliz., against fraudulent conveyances, it is a well settled principle that a purchaser for a valuable consideration without notice has a good title although he purchases of one who had obtained the conveyance by fraud; and the true reason is assigned for this established principle, viz: that the statute by an express provision, excepts the case of such a purchaser from the denunciations of the statute; but the statute which we are now expounding contains no exception, and therefore we can make none. The true ground, however, upon which the case of Jackson v. Henry was decided, is so distinctly set (236) forth in the subsequent case of Jackson on dem. of Sternbury v. Dominick, 14 John, 435, that we cannot regard it as sanctioning in the least the position for which it was introduced. That principle is, that a statute of New York (to which we have nothing analogous here) makes a sale, under a power in a mortgage to a bona fide
purchaser, without notice of usury in the mortgage, a valid and complete title. The inconvenience which would result to the community from permitting the titles of innocent persons at sales under deeds of trust to be destroyed by showing usury between the debtor and creditor, has been urged with great force, and has been sensibly felt. It is to be remarked, however, that there are inconveniences of a very serious kind that would probably follow from holding such titles exempt from this scrutiny. Needy borrowers are not free agents. In the pressure of the moment they will assent to any terms, however *Page 187 
extortionate and oppressive, and execute any instrument asked for as securities. If, the moment a sale is made, their mouths are closed to impeach the validity of a deed of trust, as an usurious security, they may be stripped of their home, their all, for little or nothing, while the purchaser may be but the secret agent of the creditor; and thus the most valuable provisions of the statute, designed for his protection, be rendered nugatory. It is to be remembered, too, that purchasers may avoid this dreaded hazard by refusing to buy unless the debtor will join in the conveyance or there be proper covenants for title, and moreover, if a purchase be made bona fide, the debtor standing by and encouraging the sale, or by his silence practicing a fraud upon the purchaser, though a court of law will be compelled to hold that no title passed, a court of equity is competent to remedy the mischief. But on which ever side the balance of inconveniences may be found, we have but to execute the law, such as we find it, and must leave the consideration of these to another department of the government.
Having arrived at the conclusion that the deed of trust in this case was absolutely void, if the debt for the security of which it was executed were usurious; and that a sale under it by the trustee did not purge the usury and could not give legal operation to the deed, the only remaining inquiry is, whether his Honor's charge on the question of (237) usury be correct. It is to be regretted that the case did not set forth the allegations of the respective parties, and the questions of law raised upon these allegations, so that we might distinctly perceive the application of the charge to the matters controverted. The case states simply the evidence given, and then, in very general terms, an instruction from the court for the guidance of the jury in their finding upon that evidence. But it purports to set forth all the evidence, and to direct the attention of the jury to the only questions of fact which, upon that evidence, it was material for them to consider. We are obliged, therefore, to understand it as tantamount to an instruction, that if Christian Hauser, at the time of the loan to the defendant, was in doubtful circumstances, and the securing of his debt to Bagge constituted any part of the motive of the latter in making the loan to the defendant, then in law such loan was usurious. Thus understanding the instruction, we hold it to be erroneous. To constitute a loan usurious, it is necessary that there should be an agreement between the parties for the lender to take a greater profit by way of discount or interest on the amount loaned, than after the rate of six dollars for the forbearance of one hundred dollars for one year. It signifies not in what shape the agreed profit upon the money lent is to accrue; it is sufficient that such profit should exceed the legal rate in order to bring the transaction within the statute. It is also wholly unimportant in what form, by what device or under what *Page 188 
pretence this reservation of unlawful profit be made, if, according to the agreement of the parties, it is designed as a profit upon the sum advanced. But the hope or confident expectation of some collateral benefit from making the loan does not necessarily show that there was a corrupt agreement to take exorbitant interest. It may indeed excite a suspicion — and in some cases a very strong suspicion — that such was the agreement in fact. Nay, when it distinctly appears that the lender is to receive, and the borrower to part with something valuable besides the lawful interest on the sum lent — and there is no consideration shown other than the loan for this additional advantage to the lender, or the (238) consideration shown is plainly inadequate, the influence of an usurious contract is so irresistible, that it is properly regarded as an inference of law. We hold, therefore, that the instruction would have been perfectly correct had it stated that a requisition by the lender of the borrower, as a condition of the loan, to take up the notes of an insolvent man or one in doubtful circumstances would per se be usury in law — and that if the securing of this doubtful debt formed any part of the lender's inducement to make the loan, it raised a suspicion of an agreement for more than lawful interest upon the money lent, which called for an explanation on his part; and that unless, upon this explanation, the jury believed that in truth there was no such agreement, it would be their duty to find the transaction usurious. There were circumstances — strong circumstances — fit to be considered by the jury as explanatory of the actual agreement. Christian Hauser was the father of the defendant — in his employment, and in the most confidential relations with him. He had ability to pay debts when he was willing, and manifested more than ordinary willingness to pay demands which the defendant either had or pretended to have against him. It was not shown what disposition the defendant had made of his father's notes. The defendant knew of their existence when he applied for the loan, and proposed to make himself personally responsible therefor. Now if the father's notes, though doubtful when Bagge's property were worth, in the son's hands, the money which they called for; or if the father had requested his son to take up these notes, and he had agreed to do so — or if Bagge bona fide believed the facts to be such as are here supposed, then in truth Bagge did not intend to take a higher profit upon the sum loaned to the defendant than the lawful interest, and there was not the corrupt agreement which the statute denounces. Whether the evidence would have induced the jury to draw any of these inferences, it becomes us not even to conjecture. But we decidedly think it was relevant and tended to establish them — and if, in the judgment of the jury, it did establish any one of them, their verdict ought to have been for the plaintiff. *Page 189 
Upon this view of the case we think it our duty to reverse the judgment and remand the cause for a new trial.
PER CURIAM. Judgment reversed.
Cited: Norwood v. Marrow, post; Brannock v. Brannock, 32 N.C. 429;McCorkle v. Earnhardt, 61 N.C. 301; McNeill v. Riddle, 66 N.C. 294;Morris v. Pearson, 79 N.C. 257; Moore v. Woodard, 83 N.C. 534;Pritchard v. Meekins, 98 N.C. 247; Meroney v. Loan Assn., 116 N.C. 908;Miller v. Ins. Co., 118 N.C. 618.
(239)