By the Court, Cowen, J.
Dugald Cameron’s original title to the whole of the Robin-farm, said -to"contain 320 acres, is not disputed. On the 6th of December, 1810, by deed of that date, he conveyed a portion, lying in the form of a triangle on the northern part of the farm, and containing about 100 acres, to William Helm, who, on the 14th of November, 1815, executed a mortgage of the same portion to Samuel S. Haight, which mortgage was assigned to Elisha Williams. The mort gage was foreclosed by advertisement, the land being bid in for his benefit, and the auction deed taken in his name. The defendants claim under him.
Neither the conveyance to Helm, nor his mortgage to Haight, however, covered the premises in question. It was sought, at the trial, to show by extrinsic circumstances that they did so; and the judge finally came to that conclusion. To warrant this, a line must somehow be imported into these instruments, running from the termination of the first line in each, south two degrees west thirty-five chains and sixty links to a stake and stones. I am not aware of any principle on Avhich this can be done; nor Avas any mentioned upon the argument. The line, no doubt, Avas omitted by mistake; but the deeds cannot be rectified at law. Relief, if due to the case, can be given by chancery only.
If otherwise, hoAvever, and admitting the foreclosure to have been regular, we think the proposed proof of payment should have been allowed. Even if Williams Avas a bona fide purchaser, his case comes directly within the reason of Wood v *276 Colvin, (2 Hill, 566.) It was there held that payment of a judgment extinguished the power to sell under it.(a) Williams was certainly no more a bona fide purchaser than the defendant who took under the sale on the judgment and fi. fa. in that case; and the defendants in this, could acquire no better title from Williams than he himself had. The statute under which this foreclosure took place provided that no sale authorized by special power should be defeated to the prejudice of a bona fide purchaser. (1 R. L. of 1813, p. 373, 4.) There must be a power. Payment extinguishes it; and the case becomes the same as if none had ever been inserted in the mortgage. The case of Jackson v. Henry, (10 John. Rep. 185,) turned on the construction of the statute of usury. Were the point in that case res integra, it might be very difficult to prove that a power to sell under a usurious security is not void, in the words of the statute of usury, to all intents and purposes; and especially against the man who participates in the concocting of the security, and his assignees. The precedent should not be extended. There are many decisions upon the usury act which are entirely anomalous. By payment, the whole mortgage is extinct; as much so as if released or paid and cancelled of record. It ceases to operate either at law or hi equity, and the whole title revests in the mortgagor. (Jackson, ex dem. Randall, v. Davis, 18 John. Rep. 7, 12; Edwards v. The Farmers' Fire Ins. & Loan Co., 21 Wend. 483, 486, 487, and the books there cited; 26 Wend. 541, S. C. on error.) To call it a mortgage, would be an abuse of the word. It is no more than a blank. It cannot be that a naked foreclosure by advertisement shall take away a man's farm.
A valid power is necessary as the foundation of the purchaser’s title. The case of Jackson, ex dem. Mackay, v. Slater (5 Wend. 295) merely holds that a statute foreclosure, though after twenty years, rebuts the presumption of payment arising from lapse of time. Other circumstances also came into that *277 case, rendering it proper that the jury should say whether the presumption was not overcome. It was not held that the foreclosure was conclusive of title, payment or no payment. It was taken for granted that, though the lessor of the plaintiff was the purchaser, he must fail, unless the jury should find that his purchase was based on an unpaid mortgage. If this were not so, why did the court talk of rebutting the presumption of payment? Why not say that the plaintiff must recover whether there was a payment or not ? He wanted no mortgage. He could have taken the farm on the newspaper and the auction. If these be equal to a foreclosure in chancery, no mortgage need be shown in the chain of proof. Take it that the old statute was as strong as the present, (2 R. S. 451, 2d ed. § 8,) viz: “ Every sale pursuant to a power as aforesaid,” made to a purchaser in good faith, shall be equivalent to a foreclosure and sale in equity. The case before us still wants the two ingredients; a power and a purchaser bona fide. Surely an assignee has not come to be considered as holding by a right paramount to that of his .assignor, like a bona fide purchaser of commercial paper. I admit that Jackson v. Henry goes that length, and even farther than the law had ever gone in favor of commercial paper. It is another reason why that case should not be extended in its application beyond the letter.
Taking it, therefore, that the mortgage and foreclosure in question were duly proved, and that they comprehended the premises in question, yet, if no defence independently of these was established at the circuit, there should be a new trial.
The case, however, not being here on bill of exceptions, the obligation to order a new trial is not peremptory, though the judge erred in directing a verdict for the defendants on the mortgage, if he also erred in overruling a defence fully established upon other grounds. The granting of a new trial on a case, is matter of discretion; and if the court see that legal justice has- been done by the verdict, they will not disturb it.
Williams having, after the foreclosure, discovered that neither the lines of Helm’s title nor those of the mortgage covered more *278 than a third of the land intended, immediately set about having the mistake rectified. He applied both to Helm the mortgagor and Cameron his grantor. Helm himself had, it seems, already discovered the mistake, and retained a surveyor to ascertain its extent. There was in fact, by the omission of the west line, a difference of more tiran 200 acres. That in the deed to Helm this was owing to a mere clerical slip of the scrivener, there is not the least doubt. Cameron admitted that the whole Robin-farm had been conveyed by him in exchange for Sodus property. He credited the whole in account, and assured a man who proposed to buy it of Helm, that the title was good. The leaving of the west line out of the deed had contracted the farm into a triangle of about 100' acres. Haight says the lines of the mortgage had been transcribed from the registry of, Helm’s title ; and it is scarcely possible for the mind to resist the conclusion that the omission was a sheer mistake. The difference was most glaring. It was known to all parties; and a court of chancery would have unhesitatingly compelled both Cameron and Helm to make new deeds including the line that had been dropped; and they would have been enjoined by that court had they brought ejectment. The true lines were apparent on the ground. They were marked around the whole Robin-farm; were easily traceable down to the time of the trial; and had doubtless been run by the very survey of Loop referred to in the deed. All this now comes out in evidence from trustees under the wills of Cameron and Helm. It is true, Helm did at first say to Williams that his mortgage was never intended for more than the triangle; and refused to correct it. Cameron also refused to correct the deed. The refusals, however, raised just such a storm as was to have been expected from the circumstances. Williams knew his rights, pressed his demand for amicable redress, and threatened an immediate suit in chancery to correct the two papers if the refusal should be persisted in. Helm finally referred him to Cameron, who gave up the controversy, and quit-claimed the whole directly to Williams. I do not go over the evidence particularly. I speak of the result as it strikes the mind.
*279 It is not denied that, in virtue of this quit-claim deed, the defendants have a perfect title, unless that deed be defeasible on some. of the technical objections which are urged against it. A prominent one is the adverse possession of Helm. What his possession was, in fact, is left quite equivocal by the proof. His constructive possession was nothing beyond the triangle, for his deed covered nothing more;' and I doubt, on the evidence, whether Williams’ tenants may not as well be said to have possessed the farm as Helm. To defeat a deed on the ground that that the grantor is out of possession, either an actual or constructive adverse possession in another should be clearly shown.
But with what propriety can adverse possession be predicated of Helm, after he had given Ms consent to abide the action of Cameron ? The statute of frauds has nothing to do with the parol admission of another’s right, when the admission is invoked to characterize a possession. The statute of maintenance was passed to prevent oppression by purchasing law smts against claimants persisting in their supposed titles. It was intended for then benefit, and they may waive it. (Kenneda v. Gardner, 4 Hill, 469.) In this case, that was most effectually done. Haight called on Helm in Williams’ behalf, to correct the mistake. To one who had copied the mortgage Mies from the registry of the deed, Helm was not so bold as to deny the mistake. Under a consciousness of truth and justice, though not prepared himself to act as he should, he does the same thing ; appoints his grantor, who had the legal title, to act for him, and the deed was given by the latter under a like consciousness. Some enquiry was made as to Williams paying a consideration, as if the deed was a fraud on Helm.' It would have been very strange for Cameron to have demanded a consideration, unless, like Helm, he was pinched in his circumstances. At best, there could have been no honesty in such a demand. The chancellor would not have waited for a consideration. Had they put Williams to his remedy by bill, the consideration would probably have come from the other side in the form of costs. The whole is no more than both Helm and Cameron were equitably bound to do, and would have been *280 compelled to do by the court. On the whole, I have been unable to agree with the circuit judge that this deed was void by reason of adverse possession. I do not think there was even a question upon it for the jury. The language and conduct of Helm, seems to me so perfectly natural under the circumstances, that no twelve men could have doubted of the transaction as spoken of by Haight. But independently of that, I entertain no doubt that a deed from one out of possession, though the land may be holden by another under an adverse claim, yet, both being at the time under an equitable obligation to convey, stands entirely clear of the statute of maintenance. The whole was here the mere compromise of a- chancery claim. • The argument against the transaction would subject the chancellor to the imputation of maintenance had the parties stood out till a decree.
Nor have I been able to discover any ground for saying that the defendants, though they claimed under Helm, were estopped to use the deed from Cameron to Williams. They were in the condition of any person who finds that he is mistaken in supposing he had got a good title from his mortgagor—a title to a whole, when it is in fact only of one-third—and who takes a conveyance from the man in whom the title of the other two-thirds is outstanding. The claiming under Helm was mere talk founded on mistake. But take it that the mortgage lines ran round the Robin-farm; yet I am aware of no principle which inhibits a mortgagee from purchasing in an outstanding title, and enforcing it against his mortgagor. On the contrary, a defective title must often be cured.in this way, to avoid" a loss of the debt. Actual payments of prior incumbrances entitle the mortgagee, in equity, to hold till the mortgagor shall reimburse them; and in some cases, if the mortgagee can get them in by assignment, he superadds a legal title, paramount to that of his mortgagor and valid against an ejectment. The effect of the mortgagor’s repaying the money is merely to avoid the effect of the mortgage. If the mortgagee have acquired a paramount title, the act of payment will not enure as a purchase of it. Indeed, a tenant may obtain a title on which he can eject *281 his landlord. All he is obliged to do, even' under this peculiar relation, is to surrender the possession. This dissolves the estoppel, and he may sue for the land. As between mortgagee and mortgagor, no such estoppel exists against the latter. The mortgagee is rather the landlord; the mortgagor being, in strict law, considered as a quasi tenant at will. Whether equity might not, in a proper case, consider the mortgagee as a trustee, and, on that ground, decree that he shall stand as a purchaser for the mortgagor’s benefit, on being reimbursed, is another question. At law, if the mortgagee acquire a good title from a third person, it is absolute. It is laid down generally in the books on mortgages, that the mortgagee is not estopped to question the title of the mortgagor. (1 Rand's Pow. 212; Coote, 355.) It is not necessary to say that he can set up an outstanding title with which he is not connected, either before or after the law day. I suppose he can not. Under our decisions, the mortgagee is at no time looked upon as having exactly the legal title. It may, at any time previous to the foreclosure, be divested by mere payment or even tender. He holds a pledge; (Edwards v. The Farm. Fire Ins. and Loan Co. ut supra;) and a pledgee is bound, in general, to surrender the subject, on payment, as a tenant is bound to surrender to his landlord at the expiration of the term. So far it may be said the mortgagee is estopped; but if to save his title, he be obliged to buy of another, the rule is different. If the mortgagor refuse to interfere and obtain the title himself, what right has he to complain ? If he lose his property, it is his own fault; and if the mortgagee obtain it for little or nothing beyond his trouble, the case is not altered.
But again ; in the view I have taken of the deed from Cameron to Helm, the latter could never have recovered the premises in question. ,The lines in his deed did not comprehend them; and of course his devisee has shown no title or possession that could ever have operated against Cameron. The name of his devisee must be considered the same as if stricken from the declaration ; and then the question stands between the title of ,Cameron and that of Williams to whom he conveyed. Suppose *282 Helm was in adverse possession; that gave him no right whatever as against Cameron. Then, as between the only plaintiff left and the defendants, what right has he to recover 1 His devisor conveyed by quit claim deed to the grantor of these very defendants ; and however void that might have been in respect to Helm, whom I am now supposing to have been in adversely at the time, it is not (for Cameron’s devisee to claim against the deed, in a suit between him and the defendants. A recovery by him in a suit against Helm or any one claiming under him, would have enured to the benefit of the defendants. In Livingston v. Proseus, (2 Hill, 526,) Mr. Justice Bronson shows very clearly that though a deed of lands held adversely be void as against the one thus holding and those subsequently coming in under him, yet as between the grantor and grantee and all persons except the adverse holder, or those standing in his place, it is good.
My conclusion is that, although the main reliance of the defendants—the mortgage—failed, yet several grounds remain, on either of which the verdict is sustainable, and should not be disturbed.
New trial denied.

 See per Cowen, J. in Deyo v. Van Valkenburgh, (ante, p. 246.)