### PADDOCK, Assignee, *v.* FISH and others.

(*District Court, S. D. New York.* January 20, 1882 )

1. BANKRUPTCY—FRAUDULENT CONVEYANCES—RIGHTS OF BONA FIDE PURCHASER OR ENCUMBRANCER.

   A *bona fide* purchaser or encumbrancer of property conveyed in fraud of creditors is entitled to protection to the extent of the moneys advanced by him on the faith of the title, although his advances were made after the commencement of the proceedings in bankruptcy against the fraudulent grantor of which he had no knowledge.

2. SAME—SAME.

   E. M. C., being insolvent, two months before proceedings in bankruptcy against him conveyed to his mother the house and lot where they both lived for a nominal consideration, and in reality for his own future use. A month afterwards he procured his mother to execute a bond and mortgage to his brother, designed to be sold in the market to raise money for the bankrupt's benefit. It was so sold by the brother in the usual course of such sales to L., a *bona fide* purchaser, who had no acquaintance with or knowledge of E. M. C., or his business or circumstances. The transaction was not closed nor the money paid until two days after the commencement of proceedings in bankruptcy against E. M. C. in another district. L.'s transactions were with the brother, and he had no knowledge or notice of the bankruptcy proceedings against E. M. C., or that the mortgage or the money raised upon it was designed for E. M. C.'s benefit. A part of the money paid by L. to the brother was applied to the payment of taxes on the property, and the rest afterwards paid by the brother to E. M. C. *Held*, that L. acquired a valid lien against the assignee in bankruptcy to the extent of the money paid for the mortgage, and that the plaintiff is remitted to his remedy for proceeds against the bankrupt.

3. USURY, MUST BE SPECIALLY PLEADED.

   No question of usury being raised by the pleadings or at the trial, *held*, that it could not be considered.

In Equity.

Action by the plaintiff, as assignee in bankruptcy of Eugene M. Cammeyer, to set aside as fraudulent and void against creditors a mortgage for $1,000 made by the defendant Sarah Fish to Augustus Cammeyer, and by him assigned to defendant Patrick Lambert. The facts, as admitted or proved, were as follows:

On the twenty-ninth of January, 1874, Eugene Cammeyer executed to his mother, Sarah Fish, a deed of the house and lot 151 Bergen street, Brooklyn, where they both lived, subject to a prior mortgage of $4,000, for the consideration of $10 and natural love and affection. The deed was at the time handed to his mother, who was told what it was. It was immediately taken back by Eugene, who kept it in his possession until he caused it to be recorded on March 6, 1874. Eugene Cammeyer was then in business in New York, had become embarassed, and the conveyance to his mother was intended for his own future use. On the second of March, 1874, for the purpose of raising money for the benefit of Eugene, his mother executed the bond and mortgage in question for $1,000 to Augustus Cammeyer, brother of Eugene, without consideration, which was recorded on the eighteenth of March, and was designed to be negotiated and money raised upon it by the sale and assignment of it to some purchaser. Similar sales of second mortgages were frequent at that time. It was offered by Augustus to the defendant Lambert at a discount of 15 per cent., who examined the property himself, and employed his son, an attorney, to examine the title, and both being found satisfactory, Lambert, on the twenty-first of March, paid $850 and received from Augustus Cammeyer an assignment of the bond and mortgage, which was recorded on that day. The assignment contained an express covenant that the whole amount of the mortgage was owing upon it, and that there was no defence or offset thereto. Of the $850, $114.50 was applied at the time of the assignment in payment of taxes upon the property for the year 1873, and the balance, $735.50, was paid over to Augustus Cammeyer, by whom it was given to Eugene.

Lambert was a builder in Brooklyn, accustomed to buy second mortgages, and 15 per cent. discount was not an unusual rate at that time. Lambert had no previous acquaintance with or knowledge of either of the Cammeyers or Mrs. Fish, and no knowledge of the business of Eugene in New York, but was informed that they lived with their mother in the house in question. The negotiation of the sale of the mortgage was conducted entirely by Augustus, and Eugene did not appear in the transaction.

On the nineteenth of March, 1874, a petition in bankruptcy was filed against Eugene Cammeyer in New York, on which an adjudication was had, and the plaintiff appointed assignee on the twenty-ninth of April following. Lambert had no knowledge or notice of the proceedings in bankruptcy against Eugene when he took the assignment of the mortgage from Augustus Cammeyer, two days afterwards. On the first of May, Mrs. Fish conveyed the property to the assignee by bargain and sale deed. Afterwards the plaintiff commenced this suit, asking that the conveyance to Mrs. Fish be declared void, as made in fraud of creditors, and that the mortgage and assignment of it to Lambert be

declared invalid for the same reason. The defendant Lambert alone answered, claiming protection as a *bona fide* purchaser. Augustus Cammeyer and the attorney of Mr. Lambert, his son, who chiefly conducted the negotiations, both died before any testimony was taken. Pending this suit the property was sold by the plaintiff, and sufficient of the proceeds to cover the mortgage in question was paid into court to abide the event of the suit. No question of usury was raised by the pleadings or at the trial.

*W. B. Putney,* for complainant.

*J. T. Marean,* for defendant Lambert.

BROWN, D. J. On the facts in this case it is not entirely clear that the mortgage of $1,000 executed by Mrs. Fish to Augustus Cammeyer for the use of Eugene, a month after the latter's deed to her for his own use, should not be held as valid a charge upon the land, as against her, as if it had been a consideration mortgage given at the time the deed was made, being executed in pursuance of the understanding that she took the title for Eugene's benefit, and Augustus being a mortgagee upon a secret trust for Eugene. Apart from this consideration, however, the bond and mortgage had no legal force or effect until they were negotiated to Lambert upon the twenty-first day of March, 1874. In the hands of Augustus Cammeyer they would not represent any existing debt or obligation, or constitute any lien upon the property. But it is proved that they were executed by Mrs. Fish to Augustus for the purpose of being sold to raise money upon them. They were sold in precisely the manner intended, and the money procured thereby was also applied to the use of Eugene, as it was intended by Mrs. Fish that it should be applied. The assignment to Lambert, the purchaser, was, therefore, by the authority of Mrs. Fish; it was an act by which she intended the land should stand charged with the amount of the mortgage; and the execution of the bond and mortgage by her, and the assignment of them to Lambert, are, in legal effect, but different parts of one transaction, whereby the land was intended to be held for the amount of the bond. Until the assignment it was inchoate and incomplete. When thus negotiated to a *bona fide* purchaser it became as against Mrs. Fish, aside from any usury law, a binding obligation to the extent of the money advanced upon it, and must therefore have the same force against the assignee in bankruptcy as a bond and mortgage for that amount would have had if executed directly by Mrs. Fish to Lambert on the day the assignment to him was executed, viz., on March 21st, two days after the commencement of proceedings in bankruptcy.

The fraudulent purpose of Eugene Cammeyer and Mrs. Fish would not affect a *bona fide* purchaser. *Carpenter* v. *Muren*, 42 Barb. 300; *Barney* v. *Griffen*, 4 Sandf. Ch. 552.

No question of usury being presented by the pleadings, nor any law of the state regulating the rate of interest being pleaded or proved, no question on that point can be here considered. *Newell* v. *Nixon*, 4 Wall. 572, 583; *Morford* v. *Davis*, 28 N. Y. 481.

The cases cited by the complainant, to the effect that the assignee of a mortgage takes it subject to the same defences and equities which existed against the assignor, (*Schafer* v. *Reilly*, 50 N. Y. 61, and cases cited,) have no application where the sale and assignment are by the authority of the mortgagor, and are a part of the mode intentionally adopted for creating a charge on the land. In such cases the mortgagee is, in effect, the agent of the mortgagor, acting under a power to create, through an assignment to a purchaser, a legal encumbrance upon the property, and when this power is executed according to the intention the mortgagor becomes bound by the debt thus created.

The deed from Eugene Cammeyer to Mrs. Fish, dated January 29, and recorded March 6, 1874, was sufficient, *inter partes*, to pass the title to her. Her assent is sufficiently proved, and recording the deed was a good constructive delivery to her. But it was manifestly void as against creditors, and as against the assignee in bankruptcy. Section 5046 of the United States Revised Statutes declares that property thus conveyed in fraud of creditors shall * * * "immediately upon his appointment be vested in the assignee," and his title when appointed, it has been held, relates back to the commencement of proceedings in bankruptcy. Upon this ground it is urged on behalf of the complainant that his title is two days prior and therefore paramount to that of Lambert, and that therefore the mortgage never became any lien upon the property.

The general rule, however, is that where a title has been transferred by acts which are fraudulent, and therefore void, as against creditors or others, third persons who deal with the fraudulent grantee in good faith, without notice of the fraud, and before any legal proceedings have been taken, as by execution levied or by bill filed to avoid the fraudulent transfer, will be protected to the extent of their advances in any title or lien so acquired in good faith, and without notice of the fraud, (*Fletcher* v. *Peck*, 6 Cranch. 133, per *Marshall*, C. J.; *Jackson* v. *Henry*, 10 Johns. 185, 197; *Jackson* v. *Walsh*, 14 Johns.

407, 415; and see *Decker* v. *Boice*, 83 N. Y. 215 ;) and the same point has been ruled in regard to a *bona fide* grantee's title as against an assignee in bankruptcy under section 5046. *Beall* v. *Harrell*, 7 N. B. R. 400, per *Bradley*, J. I think the same effect must be given to a mortgage when taken by a *bona fide* purchaser, as to a deed to a *bona fide* grantee. Such statutes concerning the effect of fraudulent transfers are construed according to their design, to prevent frauds and provide remedies against them; but not to create new frauds by applying the statutes against persons who deal in good faith upon the strength of apparent titles. Until levy or bill filed, or some notice of the fraudulent character of the previous transfers, *bona fide* encumbrancers are, therefore, protected, and the remedies of creditors, or those representing them, are transferred to the proceeds, which stand in the place of the property sold or encumbered by the fraudulent grantee.

I do not perceive in the evidence any reason to doubt that Lambert bought this bond and mortgage in good faith. It was offered for sale at a discount, like numerous others at the same time. It was a second mortgage preceding a prior mortgage of $4,000. There was nothing unusual in the circumstances. Lambert went to look at the property, and was satisfied of its value. His son, a lawyer, examined the title, and reported the title satisfactory, and thereupon he paid $850 on March 21st, of which $114.50 was used in paying the taxes on the property for the year 1873, and the balance, $735.50, was given to the assignor. All this was in the usual and customary course of such transactions. Lambert is legally chargeable with knowledge, through his attorney, that the deed to Mrs. Fish, two months before, was for $10, and natural love and affection. But he did not know Eugene Cammeyer, nor anything about his business or circumstances, nor whether he was in business or had any creditors; and nothing naturally suggested any inquiry on that subject. The open gift to his mother of the house in which she lived, as shown upon the face of the deed, would not naturally suggest the idea of any intended fraud upon creditors. Such frauds are usually accompanied by some concealment. Searches against the property and against Mrs. Fish disclosed no claims against either by any one, and nothing indicated that Eugene Cammeyer had anything to do with the mortgage offered for sale by Augustus. It was not apparently given as a consideration of the conveyance; nor was it executed to Eugene, but to Augustus; and it does not seem to me that the circumstances would

naturally suggest any inquiry or thought or search concerning the pecuniary condition of Eugene, who did not appear to have any connection with the bond and mortgage, or with the property since the gift of it to his mother.

As all the proceeds of the mortgage went, in fact, into the hands of Eugene Cammeyer, the bankrupt, except the portion paid for taxes, the plaintiff is entitled to have those moneys accounted for by the bankrupt in the bankruptcy proceedings. But Lambert, as respects his mortgage lien, is entitled to the protection of a *bona fide* encumbrancer without notice to the extent of $850, the sum actually advanced by him; and that amount, with interest, should be paid him out of the proceeds of the property, with costs; and judgment may be entered accordingly.