Elliott *v.* Wood.

---•••---

ELLIOTT *vs.* WOOD and others.

Wherever a conveyance transferring an estate is originally intended between the parties as a security for money, or for any other incumbrance, whether this intention appears from the same instrument or any other, it is always considered in equity as a mortgage, and consequently is redeemable upon the performance of the conditions or stipulations contained in it.

A mortgagee of property, authorized by the mortgage to sell the property, at public auction, and to become a purchaser of it at the sale, is not in that peculiar confidential relation to the morgagor which the law regards as a fiduciary relation, such as that of guardian and ward, attorney and client, or trustee and *cestui que trust.*

Although in all cases of purchases and bargains respecting property, made between principals and agents, the utmost good faith is required, yet a sale of his principal's property at which the same is purchased by an agent, is not necessarily void. The transaction should, undoubtedly, be scrutinized closely; but it is only voidable where there has been undue influence and advantage, or where there has been imposition. *Per* CLERKE, P. J.

It is different where the strict relation of trustee and *cestui que trust* exists. In such a case the principle applies where a purchase has been made by a trustee, of the property of his *cestui que trust;* although it was sold at public auction, it is in the option of the *cestui que trust* to set aside the sale, whether made *bona fide* or not. *Per* CLERKE, P. J.

Elliott *v.* Wood.

The owners of a certain guano island entered into an agreement with W. and G. to convey to the latter one half of said island, for $30,000; the grantees, in addition to paying that consideration, binding themselves to furnish a working capital of $20,000; and it was stipulated that W. and G. should have the sole control and management of the property for the mutual benefit of all the owners. A deed was executed, in pursuance of this agreement. The plaintiff, being the owner of one fourth of the property, mortgaged his interest to V. to secure $8075, and he subsequently executed another mortgage, on his interest, to the defendants, to secure the payment of their claims against him. By a power contained in such mortgage, the mortgagees were authorized, in case of default of payment, upon a specified notice, to sell the mortgaged property at public auction, with the privilege of themselves becoming the purchasers. In pursuance of the power contained in their mortgage, the defendants, after demand of payment and on notice of sale, sold the plaintiff's interest in the property, and purchased it themselves, for $25; and subsequently, V. under the power in his mortgage, sold the plaintiff's interest for $1200, the defendants being also the purchasers.

*Held* that the relation between the parties was not that of trustee and *cestui que trust*, but at most it was only one of principal and agent; and that in the absence of any proof of undue influence or advantage or imposition, the sales were valid, unless other principles of law rendered them void.

Under the statute authorizing a sale of mortgaged premises by advertisement, in all cases where the mortgage contains a power of sale, on complying with the requirements of the statute, as to the manner of advertising and conducting the sale, and declaring that every sale made pursuant to such a power shall be equivalent to a foreclosure and sale under the decree of a court of equity, it is only necessary, in a case where the mortgage provides that the notice of sale shall be for a shorter time, and in a different manner from that specified in the statute, that the sale should be public and not private, and that there should be notice.

By this, the rights of mortgagors are sufficiently protected; and if they have themselves provided expressly for a time and manner different from that prescribed by the statute, and if the sale is in conformity with the provisions of the mortgage, it will be upheld, particularly when it is manifest that the method contained in such provisions is more likely to secure notice to the mortgagor than the method prescribed by the statute. *Per* CLERKE, P. J.

As the 7th section of the statute expressly declares that the mortgagee, his assigns, &c. may fairly and in good faith purchase the mortgaged premises at the sale, and as the section makes no exception, this can be done, even when the mortgage contains no provision to that effect.

As usurious contracts are not absolutely void, but are capable of being treated as valid, by the borrower, if the mortgagor allows the property to be sold under a foreclosure, without taking the necessary means to avoid the mortgage, an innocent purchaser cannot be affected by any usury in the loan.

Elliott *v.* Wood.

THIS is a motion by the defendants, Woods, for a new trial, under section 268, subdivision 1 of the Code, upon a case and exceptions to review a decision at special term, directing an account.

On the 6th of June, 1857, John E. Gowan, Franklin Copeland, George R. Field and the plaintiff, Andrew C. Elliott, then owners of the guano island of Sombrero, in the Carribbean Sea, made a written agreement with the defendant, Ross W. Wood, and one Alexander H. Grant, partners as Wood & Grant, to convey to the last named parties one half of said island for the consideration of $30,000; said Wood & Grant, in addition to the consideration aforesaid, binding themselves to furnish a working capital of $20,000, to be employed, as far as necessary, in the collection and shipment of guano from the island, the residue to be divided proportionately among the parties in interest. It was also stipulated that Wood & Grant should "have the whole and sole control of the working and management of the whole for the mutual benefit of themselves and the parties hereinbefore mentioned * * * the right to sell, convert into a joint stock company, or work for mutual benefit, to be vested solely in Wood & Grant." By deed, dated August 5, 1857, referring to and making said agreement part thereof, Gowan, Copeland, Elliott and Field, conveyed an undivided half of the island to the said Ross W. Wood and Alexander H. Grant. On the 11th of October, 1858, the plaintiff, then owning one fourth of the island, mortgaged his interest to the defendant Van Vechten, to secure an indebtedness of $8075, at the same time executing his note to the mortgagee for usurious interest, (as claimed by the plaintiff,) on the amount so secured. On the 23d of November, 1860, the plaintiff executed another mortgage on his interest to the defendants, Ross W. and Richard D. Wood, partners as Ross W. Wood & Son, (the firm of Wood & Grant having been previously dissolved by the withdrawal of Grant and the substitution

of Richard D. Wood,) to secure payment, on demand, of all claims of Ross W. Wood & Son, against the plaintiff for moneys advanced.   By the terms of a power contained in the mortgage the mortgagees were authorized, on de- fault of payment, and on giving a prescribed notice, pub- licly to sell the mortgaged property, with the privilege of themselves becoming purchasers.   On the 16th of August, 1861, Ross W. Wood & Son, having demanded payment and given the stipulated notice, sold the plaintiff's interest in the island and the enterprise, *and purchased it themselves,* for $25.   On the 9th of October, 1861, Van Vechten, whose claim against the plaintiff was then represented by four renewed notes for the aggregate amount of $9080.93, pur- suant to a power embodied in his mortgage, publicly sold the plaintiff's interest in the island and every thing con- nected therewith, for $1200, Ross W. Wood, (on account of Ross W. Wood & Son,) being the purchaser.   The firm of Wood & Grant, and their successors, Ross W. Wood & Son, assumed and exercised the entire control and manage- ment of the island and the enterprise, under the agreement of June 6, 1857, from its date till some time in the month of February, 1861, since which time Wood & Son (as claimed by the plaintiff) have assumed to be the exclusive own- ers; have refused to recognize the plaintiff's title; have kept exclusive and forcible possession of the island and property thereon; have received and appropriated the proceeds thereof, and have refused to account to the plain- tiff.   To compel an accounting, and to effect the plaintiff's restoration to the enjoyment of his interest, this action is prosecuted.   The defenses set up are, substantially, the mortgage sales before referred to, a decree of the Circuit Court of the United States, dismissing, for want of prose- cution, a bill in equity filed by the plaintiff against the defendants, embracing the same subject matters involved in the present suit, and a counter-claim founded on the

Elliott *v.* Wood.

Van Vechten notes, assigned, as is alleged, to Ross W. Wood & Son before the commencement of the action.

The plaintiff replied to the counter-claim the usurious character of the notes.

The case was tried at special term in the city of New York, in December, 1866, before Hon. Justice Mason, who decided the mortgage sales ineffectual to bar the plaintiff's right to the relief demanded; held the Van Vechten notes and mortgage void for usury; and appointed a referee to state and report an account between the parties from the beginning of the enterprise to the date of the report. To review this decision was the object of the present motion.

*James Clark*, for the plaintiff. I. The defendants cannot call in question the plaintiff's original title, his and theirs being derived from the same source. (*Jackson* v. *Hinman*, 10 *John.* 292. *Fitch* v. *Baldwin*, 17 *id.* 161. *Douglass* v. *Scott*, 5 *Ohio R. Ham.* 194. *Bloom* v. *Burdick*, 1 *Hill*, 130. 1 *Greenl. on Ev.* § 23.)

II. The plaintiff's title was not divested by the sale under the mortgage of November 23, 1860, to the defendants, Ross W. and Richard D. Wood. 1. By the agreement of June 6, 1857, Wood & Grant, and their successors, Ross W. Wood & Son, were made trustees and agents of the plaintiff, and could not, therefore, become purchasers of the trust property for their own use. (*Willard's Eq. Jur.* 186, 190. 1 *Story's Eq. Jur.* §§ 322, 323. 2 *Sugden on Vend. and Pur.* London ed. 1824, 190. *White's Leading Eq. cases*, 72, and notes. *Davoue* v. *Fanning*, 2 *John. Ch.* 252. *Michoud* v. *Girod*, 4 *How. U. S.* 554. *Holt* v. *Holt*, 1 *Chan. Cas.* 190. *Whelpdale* v. *Cookson*, 1 *Vesey*, 9. *Fox* v. *Mackreth*, 2 *Bro.* 400. *Ex parte Reynolds*, 5 *Vesey*, 707. *Ex parte Bennett*, 10 *id.* 385. *Coles* v. *Trecothick*, 9 *id.* 246. *Stuart* v. *Kissam*, 2 *Barb.* 493. *Quackenbush* v. *Leonard*, 9 *Paige*, 334.

*Slade* v. *Van Vechten*, 11 *id.* 21. *Mills* v. *Goodsel*, 5 *Conn. R.* 475. *Cumb. Coal and Iron Co.* v. *Sherman*, 30 *Barb.* 553. *Robinson* v. *Smith*, 3 *Paige*, 222. *Butts* v. *Woods*, *Court of Appeals, N. Y. Trans. Aug.* 3, 1868.) 2. Ross W. Wood & Son sold the property under a power conferred upon them by the mortgage. Under such circumstances, in the absence of statutory authority, they could not become purchasers at their own sale. (1 *Washburn on Real Prop.* 528, 529. *Jenison* v. *Hapgood*, 7 *Pick.* 1. *Downes* v. *Grazebrook*, 3 *Meriv.* 200. *Benham* v. *Rowe*, 2 *Cal. R.* 387. *Hyndman* v. *Hyndman*, 19 *Ver. R.* 9. *Waters* v. *Groom*, 11 *Clark & F.* 684. 1 *Lead. Cas. in Eq.* 211, note. *Hoyt* v. *Martense*, 2 *Smith*, 231. *Slee* v. *Manhattan Co.* 1 *Paige*, 48. *Dobson* v. *Racey*, 4 *Selden*, 216. *Bergen* v. *Bennett*, 1 *Caines' Cases in Error*, 1.) The proposition that in the absence of statute authority, a mortgagee cannot purchase at a sale made by himself, under a power, is especially sustained by the case of *Dobson* v. *Racey*, above cited. The New York statute authorizes such purchase only when the power is contained in the mortgage; and in the case referred to, it is held that at a sale under a power subsequently conferred, the mortgagee cannot purchase, the statute conferring no such privilege. This is a direct recognition of the doctrine that but for the statute the mortgagee could, in no case, purchase at his own sale under a power. The statute of New York, (2 *R. S. Edm. ed.* 566,) authorizing the mortgagee to purchase at his own sale under a power contained in the mortgage, having no extra territorial force, is inapplicable to the present case. Even if the statute were applicable, the sale in question was not conducted in accordance with its provisions. (2 *R. S. Edm. ed.* 565.) 3. The stipulation that the mortgagees may not only sell but purchase, does not affect the question. Every mortgage is subject to the mortgagor's equity of redemption; a right which can be barred in one or more of the following modes only. (1.) By a decree of foreclosure or sale.

Elliott *v.* Wood.

(2.) By a sale under a power, which, in the absence. of statutory authority, cannot be made to the party vested with the power. (3.) By the mortgagor's release subsequent to the mortgage. (4.) By lapse of time, (twenty years.) The parties to a mortgage cannot, even by an express agreement embodied in it, deprive the mortgagor of his right to redeem. (2 *Story's Eq. Jur.* § 1019. *Crabb's Law of Real Prop.* § 2262. 4 *Kent's Com.* 158. *Coote on Mortgages*, 11. *Henry* v. *Davis*, 7 *John. Ch.* 40.) It is a necessary inference, from the last proposition, that a stipulation in a mortgage providing for the extinguishment of the equity of redemption in a manner legally unauthorized, is void. (*Lawrence* v. *Farmers' Loan and Trust Co.*, 3 *Kern.* 200.) A purchase by the mortgagee, at a sale made by himself under a power, is not, as already stated, in the absence of statutory permission, an authorized mode of barring the equity of redemption. Consequently, a stipulation in a mortgage, that the right to redeem may be cut off by such purchase and sale, is an agreement impairing the equity of redemption, by providing for its extinguishment in a manner legally unauthorized. In *Lawrence* v. *The Farmers' Loan and Trust Co.*, (3 *Kern.* 200,) in which the Court of Appeals held a private sale by the mortgagee under a power expressly authorizing him to sell the premises " either by public auction *or at private sale*," inoperative, because it was an unauthorized mode of barring the equity of redemption, it was conceded by the distingushed counsel who argued in favor of the validity of the sale, while contending that a power authorizing a mortgagee " to sell for the satisfaction of his demand, * * * was at all times valid by the English common law," that nevertheless, under such a power, "the mortgagee could not, at common law, have obtained a strict foreclosure ; *for a sale to himself, directly or indirectly, would have been voidable in equity.*" " The foreclosure of a mortgage cannot be caused, by the admission of the parties, in a manner not author-

ized by law." (*Pease* v. *Benson*, 28 *Maine R.* 336.) Whatever might have been the effect of the power conferred upon Wood & Son to both sell and purchase, in the absence of the trust created by the agreement of June 6, 1857, the fiduciary relationship created by that agreement, rendered the mortgagees incompetent to become purchasers of the trust property on their own account. (*See authorities before cited.*) Equity regards with jealousy all dealings between trustees and *cestuis que trust*, interfering on the slightest appearance of hardship or advantage, and going so far, even, as to deem such transactions void *prima facie*, and to require their fairness to be affirmatively shown. (*Cumb. Coal Co.* v. *Sherman*, 30 *Barb.* 573.  65 *Law Library*, 146.) The power in the mortgage to Wood & Son, not only authorized the mortgagees to purchase at their own sale, but required no public notice of such sale to be given.

III. The plaintiff's title was not divested by the sale to Ross W. Wood, under the mortgage to Van Vechten. 1. At the date of the sale, the purchaser sustained a fiduciary relationship to the plaintiff in respect to the mortgaged property, and could not, therefore, purchase it for his own advantage. (*Davoue* v. *Fanning*, 2 *John. Ch.* 252, *and other authorities before cited.*) The pretense of Wood & Son, that they were obliged to purchase for their own protection, is without foundation ; for, by the terms of Van Vechten's mortgage, it is made subject to the plaintiff's indebtedness to Wood & Son.  Had it been otherwise, and had the defendants bid in the property to protect their own interest, they would, by reason of their fiduciary character, still hold the title in trust, subject to a claim upon it for the amount paid to purchase it in.  (*Willard's Eq. Jur.* 188.  *Quackenbush* v. *Leonard*, 9 *Paige*, 334.  *Slade* v. *Van Vechten*, 11 *Paige*, 21.)  "A trustee who buys in an outstanding incumbrance against the trust estate, is only entitled to hold such incumbrance as a security for the amount actually paid by him therefor, with interest."

Elliott *v.* Wood.

(*Willard's Eq. Jur.* 188.) " If a trustee has a personal interest in the sale, which may be sacrificed if he is not permitted to bid, the court will appoint a master, or another trustee in his place, to make the sale. But even in these cases, the court must be satisfied that the interest of the *cestuis que trust* will not suffer in consequence of such permission. If the trustee, in virtue of his trust, possess superior advantages of information as to the situation and value of the property, so that he will not come to the sale on terms of equality with other bidders, the court will not put him in a situation, which may make it for his interest to keep that information to himself." (*Willard's Eq. Jur.* 178, 188. *De Caters* v. *Le Ray Chaumont,* 3 *Paige,* 178.)

2. The claim of Van Vechten and the mortgage given to secure it, are void for usury. The court has found, and the evidence shows, that cotemporaneously with the execution of the mortgage to Van Vechten, and as part of the same transaction, a note was given by the mortgagor to the mortgagee for usurious interest on the debt intended to be secured. This annulled the entire transaction. (*Merrills* v. *Law,* 9 *Cowen,* 65.) Even *negotiable securities* are void in the hands of *innocent holders,* if tainted with usury. (*Lowe* v. *Waller, Doug.* 736. *Bowyer* v. *Baampton,* 2 *Strange,* 1155. *Kent* v. *Walton,* 7 *Wend.* 256. *Bebee* v. *Bank of N. Y.* 1 *John.* 534, note. *Thompson* v. *Berry,* 3 *John. Ch.* 395.) The decision in *Jackson* v. *Henry,* (10 *John.* 185,) that an innocent purchaser under a statute foreclosure, is not affected by the usurious character of the mortgage, proceeds expressly on the ground that the statute, (2 *R. S. Edm. ed.* 566, § 8,) in terms, gives to such sale, as to a *bona fide* purchaser, the effect of a *decree of foreclosure ;* and it is too late to plead usury after a judgment or decree. But the statute declaring the effect of a foreclosure by advertisement and sale, has no application to the case at bar, the mortgaged property being situated out of the state. In *Hyland* v. *Stafford,* (10 *Barb.* 558,) it

was held that the statute giving the effect of a decree of foreclosure to a sale made pursuant to its provisions, does not apply where the vendee has notice of the usurious character of the mortgage, *and that a subsequent innocent purchaser from such vendee, takes no title.* It is a necessary inference, that but for the protection afforded by the statute, (inapplicable to this case,) declaring the effect of foreclosure by advertisement and sale, even a *bona fide* purchaser at such sale would be liable to have his title defeated by showing usury in the mortgage debt; for, apart from the statute, an innocent purchaser from a vendee having notice of usury, stands in as favorable a light as an innocent purchaser under a mortgage tainted with usury. It is not necessary, in order to entitle a party to relief against a usurious mortgage, that a tender should be made of the principal of the mortgage debt. (1 *R. S.* *Edm. ed.* 276, § 8. *Cole* v. *Savage,* 10 *Paige,* 583. *Manice* v. *N. Y. Dry Dock Co.,* 3 *Edw.* 143. *Folsom* v. *Blake, Id.* 442.) The principle that a mortgagee or purchaser of an equity of redemption, cannot attack, on the ground of usury, a mortgage subject to which he has taken his conveyance, is inapplicable to the question in hand. Ross W. Wood & Son, it may be admitted, could not call in question the validity of Van Vechten's mortgage, their own having been taken subject to it; but that is far from saying they can acquire a good title *under it.* (*Ord on Usury,* 131. *Blydenburgh on Usury,* 106. *Post* v. *Dart,* 8 *Paige,* 639. *Shufelt* v. *Shufelt,* 9 *id.* 137. *Dix* v. *Van Wyck,* 2 *Hill,* 522. *Morris* v. *Floyd,* 5 *Barb.* 130. *Berdan* v. *Sedgwick,* 40 *id.* 359.)

The clause in the mortgage to Ross W. Wood & Son, making it subject " to all the rights of the said John Van Vechten under the said indenture of October 11, 1858," &c. does not estop the plaintiff from alleging the usurious character of the latter's claim. Its office is simply *to limit or qualify the estate granted.* It was never intended or un-

derstood as a representation designed to induce the mort-gagees to become purchasers *of* or *under* the Van Vechten mortgage. It is not an *estoppel* by *deed*, for *that* only operates in favor or support of the estate or right granted. It is not an *estoppel in pais*, to create which there must be an admission by the party "intended to influence the conduct of the man with whom he is dealing, and actually leading him into a line of conduct which must be prejudi-cial to his interest, unless the defendant be cut off from the power of retraction. *This I understand to be the very definition of an estoppel in pais.*" (*Cowen, J. in Dezell* v. *Odell,* 3 *Hill,* 225.) An admission made in *one* transaction, without any intention of influencing a party's conduct in reference to *another*, cannot operate as an estoppel with respect to the latter. (*Reynolds* v. *Lounsbury,* 6 *Hill,* 534. *Lawrence* v. *Brown,* 5 *N. Y. Rep.* 394. *Ferguson* v. *Hamil-ton,* 35 *Barb.* 427. *Chautauque Co. Bank* v. *White,* 6 *N. Y. Rep.* 236. *Pickard* v. *Sears,* 6 *A. & E.* 469.)

IV. The plaintiff's interest in the island in question, is an interest in *real estate*, and not as claimed by the defendants, a mere chattel interest. 1. It is so treated by all the con-veyances and mortgages. The original deed to Wood & Grant recites that the grantors, of whom the plaintiff was one, are "*the owners of the said island ;*" and it purports to convey to the grantees, "their heirs and assigns, all and singular the *one equal undivided half part of the said island :* * * * * to have and to hold the same to the said parties of the second part, their heirs and assigns forever," covenanting that the grantors have good right to convey "*the said premises.*" The mortgage to Van Vechten recites that John E. Gowan and Franklin Cope-land had "sold and conveyed to one George R. Field, one equal undivided eighth part *of said island,* and to the said Andrew C. Elliot, *two equal undivided eighth parts thereof,*" and purports to convey to the mortgagee, "his heirs and assigns forever, all the right, title, and interest of the said

party of the first part (plaintiff) of, in and to the said island of Sombrero: * * * * to have and to hold the same unto the said party of the second part, his heirs and assigns forever," concluding with a covenant against the grantor's acts. The mortgage to Ross W. and Richard D. Wood recites that "*the said island* and the enterprise connected therewith, *now belong to the said Andrew C. Elliott, Ross W. Wood and J. A. Warner,* in the following proportions, to wit, the said Elliott and said Warner each having an equal one undivided fourth part thereof, and the said Ross W. Wood an undivided half part thereof," and further recites that said Elliott "*is now the owner of the said undivided fourth part of said island and of the enterprise connected therewith,*" conveying and covenanting substantially as the mortgage to Van Vechten. It is submitted that the defendants, Ross W. Wood & Son, are concluded by the foregoing recitals and covenants, and that, whatever may have been the character of the plaintiff's original title, the defendants are estopped from denying that at the date of the last mentioned mortgage, "*the island*" and the enterprise connected therewith, "*belonged*" to him and his associates, he being the "*owner*" of an "undivided fourth part" thereof. 2. The exclusive right of occupancy, for the purpose of obtaining and selling guano, secured, under certain conditions, by the act of congress of August 18, 1856, to the discoverers of islands, rocks, and keys containing such deposits, is a title to real estate. (*Brightly's Digest,* 301.) It is an interest in land, unlimited in duration; and the term "real estate, includes every possible interest in lands, except a mere chattel interest," or term for years. (*Jackson* v. *Parker,* 9 *Cowen,* 81. *Kent's Com.* 401. *First Bap. Church* v. *Bigelow,* 16 *Wend.* 28.)

V. If it be conceded, as claimed, that the plaintiff held a mere chattel interest, it does not vary the rights of the parties. 1. Mortgages of chattels real possess the incidents of mortgages of realty, and not of mortgages of per-

sonalty. (*Breese* v. *Bange*, 2 *E. D. Smith*, 474.) 2. The principle that a trustee cannot purchase the trust property on his own account, applies as well to chattels as to realty. (*See authorities before cited.*)

VI. The decree of the Circuit Court of the United States, dismissing the plaintiff's bill in equity, is no bar to the present action. The bill was not dismissed after a hearing on the merits, but "for want of prosecution." " An order of admission is no bar, unless it determines that the plaintiff is not entitled to the relief sought; therefore, *an order dismissing a bill for want of prosecution is no bar.* (6 *Library of Law and Eq.* 191. *Welford's Eq. Pl.* 357. *Brandlyn* v. *Ord*, 1 *Atk.* 571. *Mitf. by Jeremy*, 238. 14 *Vesey*, 232.)

*S. P. Nash*, for the defendants. I. The plaintiff having mortgaged his entire interest in the island, enterpise and proceeds, to John Van Vechten, with power of sale by way of foreclosure, the sale by said Van Vechten under the said mortgage, to the Woods, as the highest bidder, was equivalent to a sale by Elliott himself, and estopped him from claiming as against the Woods any rights in derogation of such sale. (1.) The court, at special term, held that the interests of Elliott and of the other parties in the said island and enterprise having been conveyed and described as real estate, must be so regarded. This was error, and influenced the court in its other findings. None of the parties had any claim to have been discoverer of the island. Those first connected with it, Field and Gowen & Co. only claimed to have taken possession of it as an uninhabited island. The proceedings under the guano act never came to any thing. The interests of the parties were, therefore, interests in machinery and tools for mining guano, the product itself, and the moneys received, all personal property. (*The Am. Guano Co.* v. *The U. S. Guano Co.* 44 *Barb.* 23.) Parties, by the

language used in their transfers, do not make personal property real estate, and besides, in all the transfers the nature of the interest as a simple possessory one was stated. There is nothing, then, in the idea of the property being real estate, which rendered the sale under the Van Vechten mortgage ineffectual. (2.) Assuming that as between the plaintiff and Van Vechten, the Van Vechten mortgage was void for usury, the plaintiff is estopped from setting up such usury against Wood & Son, who were purchasers in good faith without notice. There is nothing to show that the Woods knew any thing of the usury. The proceeding by Van Vechten was in hostility to their interests, and they were obliged to buy for self protection. Elliott conveyed by mortgage to Wood & Son subject to the mortgage he had made to Van Vechten, subject to Van Vechten's demand as a valid indebtedness. By so conveying he waived the usury and put it out of their power to contest the mortgage, and made it as to them a valid security. (*Sands* v. *Church*, 2 *Seld.* 347, *and other cases cited and approved in Williams* v. *Tilt*, 36 *N. Y. Rep.* 319. 325, 326. *Murray* v. *Barney*, 34 *Barb.* 336. *Berdan* v. *Sedgwick*, 40 *id.* 359. *Hardin* v. *Hyde*, *Id.* 435. *Hartley* v. *Harrison*, 24 *N. Y. Rep.* 170. *Chamberlain* v. *Dempsey*, 36 *id.* 144, 148, 149.) (3.) In *Jackson* v. *Henry*, (10 *John.* 195,) a title acquired by a *bona fide* purchaser at a statute foreclosure was sustained against an attempt to defeat it on the ground of usury in the mortgage under which the sale was made. The judge, at special term, thought this case could only be sustained under the statute making such a sale equivalent to a foreclosure and sale under decree. But the decision was placed by the court clearly on the ground that the mortgagor, by allowing the sale to go on, was estopped to deny its validity as against a *bona fide* purchaser; and as authority for this rule the case is still approved. (*Williams* v. *Tilt*, 36 *N. Y. Rep.* 319, 325, 326. *Dix* v. *Van Wyck*, 2 *Hill*, 522.) (4.) It is true that in

*Cameron* v. *Irwin*, (5 *Hill*, 272,) and *Hyland* v. *Stafford*, (10 *Barb.* 558,) the judges were troubled to see how a purchaser under a void power could get a good title. But it is now settled that usurious contracts are voidable, not void, and a power to sell in a usurious mortgage may become good, if the mortgagor fails to assert its validity in time. (5.) The power of sale was executed in accordance with authority given in the mortgage, and there is no equity in permitting the plaintiff to repudiate it.

II. The purchase by Wood & Son, at the sale under their own mortgage, was a bar to all right of equitable relief. (1.) This mortgage recited an indebtedness in November, 1860, of "about twenty thousand dollars," and authorized Wood & Son, in case of non-payment on demand of any sums then due or to become due, to sell at public auction on notice to be given, as specially provided, all the interests mortgaged, and to become the purchasers at any such sale, which should be "a perpetual bar both in law and in equity, against the said Elliott." On the first of May, 1861, Wood & Son rendered a full account against Elliott; made demand for payment; served the ninety-day notice of sale as required; and on the 16th of August, 1861, put up for sale by a licensed auctioneer, and being the highest bidders themselves, bought the property. This sale was an extinguishment of the plaintiff's rights. (*Olcott* v. *The Tioga R. R. Co.* 40 *Barb.* 179; *affirmed* 27 *N. Y. Rep.* 546.) (2.) There was no fiduciary relation between Wood & Son and Elliott to preclude their purchasing Elliott's interest. They were not by the original agreement, made in any way trustees, any further than like partners, to manage the business honestly. Wood & Son would have had no right to buy the products of the island of themselves, or in the matter of sales or purchases to act in the double character of an individual firm, and associates in a joint enterprise. But they were not trustees of the individual interests of the other asso-

ciates.  They were free to buy out the share of either
at an agreed price, or to lend money on such share.
(3.) There was no obligation imposed by the agreement
to continue the joint interest indefinitely.  If there had
been, it was terminated by the contract of January 13,
1860, itself terminated shortly afterwards.  (*See Wood* v.
*Warner*, 15 *New J. Ch.* 81.)  (4.) All actual confidence
had ceased between the parties before the proceedings of
Wood & Son, under their mortgage.  The letters of April
and May, 1861, show they had broken with each other.
Elliott was insolvent in 1860, and attempting to dispossess
Wood & Son of the island.  The accounts were served on
him in April and May, and the sale took place on the 16th
August, 1861.  On the 15th, he filed a bill for an account-
ing and to restrain the sale.  It cannot be claimed that at
this period Elliott was reposing any trust or confidence in
Wood & Son, which debarred them from enforcing their
remedies against him.  (5.) There is no allegation of sur-
prise about the sale.  Elliott had received the accounts;
knew he owed a large sum of money, and knew the situ-
ation of things on the island, where he had himself been.
He had ninety days to induce any one to take his position
in the business, but he knew its affairs were desperate,
and but for Mr. Wood's " selling every thing he had to
obtain money," it would have gone to ruin.  (6.) If Wood
& Son had sought relief from the court, either a sale would
have been ordered, at which they would have been allowed
to buy, or Elliott would have been foreclosed after a fixed
period for redemption.  The full and express power given
in the mortgage to save the delay and expense of a suit
should be carried out according to its spirit and intent.

III. But if the sale did not foreclose all equity of
redemption, it was an effectual termination of the enter-
prise as one still proceeding on joint account.  The plain-
tiff's right, if any, was only to have the property sold
revalued and Wood & son charged with the value.  The

Elliott *v.* Wood.

property became the absolute property of Wood & Son, subject only to this re-adjustment, and they had a right to deal with it as their own, without being liable for any profits made out of its subsequent employment. (*Olcott* v. *Tioga R. R. Co. ubi supra.*) But the decision at special term, holds the sale entirely inoperative and void, and directs an account to be taken down to the time of the referee's report as of a continuing partnership.

IV. The equitable claim above stated, to have the property re-valued, is one addressed to the favor of the court, and not to be allowed against equity. In all such cases, laches, or the lying by of a party when he ought to act peremptorily, is good ground for denying relief. This is especially so in matters of commercial, mining or other similar enterprises. (*Lindl. on Part.* 761, 762. 87 *Law Lib. Frost* v. *Koon*, 30 *N. Y. Rep.* 428.) It was in the spring of 1861, when, owing to the war, all commercial enterprise was uncertain, that Wood & Son had to decide what to do with the adventure they had undertaken. It was over $50,000 in debt to them; their associates were insolvent; their own means exhausted. They were entitled, if they struggled to keep it alive, to do so on their own account. Elliott had done nothing to prevent the sale they had advertised, nor Van Vechten; he brought a suit for an account, but did not prosecute it, and it was dismissed for want of prosecution, and not till three years afterwards (1864) did he commence these proceedings.

VI. If the case is considered as turning on the fact of usury, there was no usury in the original deed to Van Vechten, nor in the moneys thereby secured. The subsequent agreement, by which the deed was made to stand for a still further loan, in which there was usury, could not invalidate the original security.

VII. The decision of the special term should be reversed, and judgment ordered for the defendants Wood & Son.

*By the Court,* CLERKE, J. As to what constitutes a mortgage, courts of equity hold that the particular ·form or words of the conveyance are unimportant; and it is laid down, as a general rule, that wherever a conveyance transferring an estate is originally intended between the parties as a security for money, or for any other incumbrance, whether this intention appears from the same instrument or any other, it is always considered in equity as a mortgage, and consequently is redeemable upon the performance of the conditions or stipulations contained in it. In the present case an absolute conveyance, on its face, in the two instances was given; one to Van Vechten, the other to Ross W. Wood and Richard D. Wood; but by a defeasance in each case, the transaction became a mortgage, and the mortgagor is entitled to all the rights of the owner of the equity of redemption.

In determining the nature of the property mortgaged, the proper and legal mode · of foreclosing the equity of redemption, and the rights of the parties, we must be governed entirely by the language employed by them in the instruments which they adopted as the evidence of their agreements. By these agreements, it is evident that they considered the mortgaged property as real estate, to be treated and dealt with precisely as if it was situated within the territorial jurisdiction of the state of New York, subject to the provisions prescribed by its laws relating to the foreclosure of the equity of redemption, and to any rights pertaining to any of the parties. To the mortgagees in both instruments, the plaintiff conveys all his right, title and interest of, in and to the island of Sombrero, situated in the West Indies, and in and to all deposits, minerals, earths, fossils, and property of every nature and description on the said island; and, in both defeasances, it is expressly provided that the respective mortgagees, or ·their legal representatives or assignees, may become the purchasers at the foreclosure sale; and, in that event, no

Elliott *v.* Wood.

further or other conveyance of said property shall be necessary, and that such sale, whoever should become the purchaser, should be a perpetual bar in law and equity against Elliott, (the plaintiff,) his executors, administrators, and assignees. As to the mode of foreclosure, it was provided in a supplemental memorandum, amendatory of the previous defeasance, that in case Elliott failed to pay to Van Vechten, on demand, as the same shall become due, the sums which he then owed, or may thereafter owe him, it may be lawful for him to sell the property at public auction, at the Merchants' Exchange in the city of New York, upon notice of such intended sale, to be inserted in a newspaper published in the said city, once a day for thirty successive days, and without any further notice whatever; and, in a memorandum supplemental to, and amendatory of the defeasance agreement between the plaintiff and the defendants Wood, it is provided that the notice of sale to be given by them, instead of being a notice of thirty days, to be published in a newspaper, should be a notice of ninety days by leaving a copy thereof at a certain office or place of business in the city of New York, and by addressing another copy of said notice to Elliott at Baltimore, Maryland, or, if he should change his place of residence, then to such other as he may designate. The special term finds that, on failure of payment of the sums due to Van Vechten, the latter having given the notice required by the agreement between the plaintiff and said Van Vechten, he offered the said property for sale at public auction, at the Merchants' Exchange in the city of New York, at 12 o'clock, noon, and that the defendant, Ross W. Wood, having bid at said sale for said property, the sum of $1200, and that being the highest bid offered, the property was sold to said Wood, and a deed of it was executed and delivered by Van Vechten to said Wood.

The special term also finds, with regard to the mortgage to the defendants Wood, that the latter, after having given

the notice required by the amendatory agreement, offered the share and interest of the plaintiff in the said property for sale at the Merchants' Exchange in the city of New York, and that the said Ross W. and Richard D. Wood having bid for it, at said sale, the sum of $25, and no other bid being offered, they purchased the said share and interest.

I. The counsel for the plaintiff contends, that the relation between the plaintiff and the defendants Wood, was that of *cestui que trust* and trustee, and that they were, therefore, incompetent to be purchasers of the property. Is the mortgagee of property, authorized by the mortgage to sell the property at public auction, and to be a purchaser of it at the sale, in that peculiar confidential relation to the mortgagor, which the law regards as a fiduciary relation, such as that of guardian and ward, attorney and client, trustee and *cestui que trust?* If any such relation can be supposed to have existed between the plaintiff and the defendants Wood, it must be on the ground that the one was the principal and the other the agents, for the sale of the property in question. In all cases, indeed, of purchases and bargains respecting property made between principals and agents, the utmost good faith is required. But a sale of his principal's property, purchased by an agent, is not necessarily void. The transaction should be, undoubtedly, scrutinized closely; but it is only voidable, where there has been undue influence and advantage, or where there has been imposition. It is different, certainly, where the strict relation of trustee and *cestui que trust* exists; and, in such case, the principle applies where a purchase has been made by a trustee, of the property of his *cestui que trust;* although it was sold at public auction, it is in the option of the *cestui que trust* to set aside the sale, whether made *bona fide* or not. The relation in the present case I hold not to be of that character, and that, at most, it is only one of principal and

Elliott *v.* Wood.

agent; and, as no undue influence or advantage, or imposition has been shown, the sale is valid, unless other principles of law render it void.

II. Undoubtedly, courts of equity have always held that the equity of redemption is so inseparable from a mortgage, it cannot be disannexed even by an express agreement of the parties. But by statutes of the state it has been long declared that mortgaged land can be sold by advertisement, in all cases, where the mortgage contains a power to the mortgagee, or any other person, to sell it, upon default being made in any condition of the mortgage. Every sale pursuant to such a power is declared to be equivalent to a foreclosure and sale under the decree of a court of equity. As the law, however, looks upon the mortgagor as one who might, by his necessities, be driven to an improvident contract, it requires that the party availing himself of the power must conform to the requirements of the statute to bar the equity of redemption. For instance, the sale must be public, even when the mortgage contained a power to sell either by public auction or at private sale. (*Lawrence* v. *The Farmers' Loan and Trust Co.*, 3 *Kern.* 200.) The sale in the case which I have just noted, was private and secret, and without notice to the heirs or representatives of the mortgagor, by advertisement pursuant to the statute, or otherwise; and it was held to be void. Whether the Court of Appeals in that case held, that in every particular the method prescribed by the statute must be strictly followed, may be considered doubtful. For instance, that the notice of sale should be published for twelve weeks successively, and that the notice should be affixed at least for that time on the outward door of the building where the county courts are directed to be held in the county where the premises are situated. Is this necessary where the mortgage provides that the notice of sale shall be for a

shorter time and in a different manner? I am inclined to think that in all cases it is only necessary that the sale should be public and not private; and that there should be notice. By this, the rights of mortgagors are sufficiently protected; and if they have themselves provided expressly for a time and manner different from that prescribed by the statute, and if the sale is in conformity with the provisions of the mortgage, it will be upheld, particularly when it is manifest that the method contained in such provisions is more likely to secure notice to the mortgagor, than the method prescribed by the statute. The mortgage to the Woods, or rather the supplement, provided that the notice should be given ninety days before the sale, and that to Van Vechten provided that it should be given thirty days before the sale; and, accordingly, these notices were given, as we have seen by the findings of the special term. The 7th section of the statute expressly declares that the mortgagee, his assigns, and his or their representatives, may fairly and in good faith purchase the premises at the sale; and as the section makes no exception, this can be done even when the mortgage contains no provision to that effect.

III. Does the usury in the loan from Van Vechten to Elliott affect the sale to the defendants Wood, under the foreclosure?

Both counsel have referred to *Jackson* v. *Henry*, (10 *John.* 195,) and both agree that an innocent purchaser, under a statute foreclosure, is not affected by the usurious character of the mortgage. But, the counsel for the plaintiff insists that this decision does not apply to the present case, as the mortgaged property is situated out of the state. As I have already said, however, in the introductory part of this opinion, I have regarded this mortgaged property, throughout, in analogy to the laws relating to the foreclosure of property within the territorial jurisdiction of the state. The parties, evidently, in their dealings and

agreement, meant that it should be regarded in this light.

The decision in *Jackson* v. *Henry*, has been recognized in several recent cases; and I deem it now satisfactorily settled that as usurious contracts are not absolutely void, but are capable of being treated as valid by the borrower, if the mortgagor allows the property to be sold under a foreclosure, without taking the necessary measures to avoid the mortgage, an innocent purchaser cannot be affected by the alleged usury.

The judgment of the special term should be reversed, new trial ordered, costs to abide event.

[NEW YORK GENERAL Term, January 4, 1869. *Clerke*, *Sutherland* and *Geo. G. Barnard*, Justices.]