EDGELL v. HAM et al.

(Circuit Court of Appeals, Fifth Circuit. April 4, 1899.)

No. 696.

USURY—MORTGAGE.
　　When a mortgage on real estate, not usurious on its face by the lex loci rei sitæ, is foreclosed, the conveyance to the purchaser cannot be attacked for usury in the mortgage.

In Error to the Circuit Court of the United States for the Western Division of the Northern District of Mississippi.

This is an action of ejectment to recover 3,600 acres of land situated in Coahoma county, Miss. George S. Edgell brought the suit against J. Sam Ham, the tenant in possession. His landlords, W. H. Carroll, trustee of the Union & Planters' Bank, J. C. Neely, H. M. Neely, and S. H. Brooks, partners under the firm name of Brooks, Neely & Co., were made parties defendant on their motion. They pleaded not guilty. The plaintiff read in evidence a deed of trust executed by J. T. Jefferson to W. G. Wheeler, trustee, of date March 10, 1886, embracing the lands sued for. This deed of trust secured three notes of Jefferson, payable to F. W. Dunton, for $2,705 each, dated "Burke's Landing, Miss., March 10th, 1886," payable, respectively, November 1, 1886, November 15, 1886, and December 1, 1886. They bore interest from maturity until paid at the rate of "ten per cent. per annum." The deed of trust recited that Jefferson was "of the county of Coahoma and state of Mississippi," and that Wheeler and Dunton were of New York. It contained a power of sale. It provided for the substitution of another trustee, and that the "contract embodied in this conveyance, and the notes secured hereby, shall in all other respects be construed according to the laws of the state of Mississippi, where the same is made." It was acknowledged before a commissioner for Mississippi at Memphis, Tenn. It was filed for record in the proper office in Coahoma county, Miss., May 13, 1886. The plaintiff also read in evidence Dunton's letter to Wheeler, dated September 7, 1887, declaring the notes due, default having been made in the payment, and directing sale; Wheeler's resignation as trustee, dated September 7, and the appointment of B. J. Martin as trustee. This appointment was recorded in "Book DD, page 458, of the Record of Land in Coahoma County." The plaintiff then read in evidence the record in the case of Jefferson v. Martin. This was a suit by J. T. Jefferson against B. J. Martin and F. W. Dunton in the chancery court of Coahoma county, Miss. The purpose of the bill was to enjoin the sale under the deed of trust, and to have it declared void for usury, under the statutes of either Tennessee or New York. By this bill Jefferson alleged that the "negotiations were commenced, the contract completed, and the notes executed in pursuance thereof, in the state of Tennessee, and were made payable in the state of New York." Jefferson's deposition, taken in the Mississippi suit, was also read in evidence. It tended to show that the loan, and contract to secure it, were made in Tennessee. The decree of Hon. W. R. Trigg, chancellor, decided that the contract should be governed by the laws of Tennessee, reduced the interest to 6 per cent. per annum, and ascertained a balance to be due of $4,909.06, and dissolved the injunction, so as to allow a foreclosure as to the sum so found due. On appeal to the supreme court of Mississippi, this decree was by that court affirmed on March 11, 1895. The bond given by Jefferson to obtain the injunction had on it, as sureties, H. M. Neely, S. H. Brooks, and J. C. Neely. The plaintiff then read in evidence the following conveyance:

"B. J. Martin to Geo. S. Edgell. Deed.

"By virtue of, and pursuant to, the terms and provisions of a deed of trust of date March 10th, 1886, executed by Joshua T. Jefferson to W. G. Wheeler, trustee, to secure certain indebtedness therein mentioned,—said trust deed being of record in the clerk's office of Coahoma county, Miss., in Deed Book W, pages 381 et seq., of the land records of said county, at Friarpoint,—and

pursuant to a decree of the chancery court of said county of Coahoma, in the First district, in the case of J. T. Jefferson vs. B. J. Martin, Trustee et al., entered on the —— day of December, 1893, dissolving the injunction theretofore issued in said cause, and holding the said trust deed, and the notes thereby secured, a valid security for the sum of $4,909.06, and authorizing the foreclosure of said trust deed for said amount, which said decree was affirmed by the supreme court of Mississippi, the undersigned, as substituted trustee, after advertising the time, place, and terms of sale as required by said trust deed, this day offered for sale to the highest bidder for cash the following lands embraced in said trust deed, to wit: Lots two, three, four, five, six, and seven in section twenty-four; all of section twenty-five; lots one, two, three, four, and five in section twenty-six; all of fractional section thirty-four; lots one, two, three, four, five, six, seven, eight, nine, ten, eleven, and twelve in section thirty-five; all of section thirty-six; all in township twenty-eight, range six west; lots three, four, five, six, seven, eight, and nine in section thirty; and all except the east half of the northeast quarter of section thirty-one in township twenty-eight, range five west; and lots one, two, three, four, five, six, seven, eight, nine, ten, and eleven in section three, including all accretions by the river, in township twenty-seven, range six west, containing thirty-six hundred acres, more or less; all of said lands lying in Coahoma county, Mississippi,—and struck off and sold the same to Geo. S. Edgell, at the price of five thousand dollars. The undersigned first offered said lands in subdivisions of not exceeding one hundred and sixty acres, and then offered said lands as an entirety, and the said sum of five thousand dollars bid for said lands as an entirety by the said Geo. S. Edgell, exceeding the sum bid for the said lands, when offered in subdivisions as aforesaid, the same was struck off to him at the said sum of five thousand dollars, which was the last, highest, and best bid therefor: Now, therefore, in consideration of the premises, and the said sum of five thousand dollars, the undersigned, who was duly substituted as trustee in the place of said W. G. Wheeler, resigned, hereby conveys and specially warrants all of the above-described lands to the said Geo. S. Edgell. Witness his signature this 20th day of April, 1895.

"B. J. Martin, Trustee."

This deed was duly and legally acknowledged and recorded.

The defendants read in evidence: A deed of trust from J. T. Jefferson to E. L. McGowan, trustee, conveying said lands, of date February 18, 1891. Toof, McGowan & Co. are the beneficiaries of this deed. It contained power of sale. Deed of E. L. McGowan, Jr., trustee, to W. H. Carroll, J. C. Neely, S. H. Brooks, and H. M. Neely, conveying said lands, of date March 25, 1896. Deed of trust from J. T. Jefferson to D. A. Scott, conveying said lands, dated February 26, 1891. This deed contained power of sale, and said Brooks, Neely & Co. are the beneficiaries. Deed of D. A. Scott, trustee, to Brooks, Neely & Co., conveying to them said lands, of date January 2, 1893.

The defendants examined J. T. Jefferson as a witness and he testified as follows: "Shortly before the execution of the notes and trust deeds of March 10, 1886,—the notes payable to F. W. Dunton, and the trust deed to W. G. Wheeler, as trustee,—I called on F. W. Dunton, in New York City, and arranged with him to get the money called for by said notes. This was down in the city of New York., and the terms were all agreed on there. When I got back to Memphis, Martin, Dunton's agent residing there, drew up the papers; and I signed and executed them, and delivered them to Martin. I was a resident of Memphis, Tenn., at the time of the transaction, and have been for many years. I still reside there. From 1891 to 1896 I spent the most of my time in Arkansas. Was engaged in planting there, in connection with J. C. Neely, of Memphis. Every Saturday evening I would go up to Memphis on the boat, and return on Monday evening. I do not know why the notes to Dunton were dated 'Burke's Landing, Mississippi.' They were executed and delivered to B. J. Martin, Dunton's agent in Memphis, Tenn., who, I suppose, sent them to Dunton. I owned a plantation, at that time in Coahoma county, Miss., called the 'Burke Place,' or the 'Burke's Landing Plantation.' Dunton loaned me the money to run the place, but I don't know that it was all used that way. Might have used some of it in my business in Memphis. I didn't

spend a great deal of my time on my plantation. If I had spent more of my time there, I might have been better off. I did not read over the trust deed before I signed it, and didn't notice that I was described as being 'of Coahoma county, Miss.,' or that it stated that the contract was made in Mississippi. Prior to that time I had signed and acknowledged two deeds of trust, each securing $25,000, that contained the same provisions, but I didn't read over any of them. They were prepared and presented to me for execution, and I executed them without examining them." The plaintiff, in rebuttal, examined B. J. Martin, whose evidence tended to show that the agreement between Dunton and Jefferson for the loan was not concluded in New York, but was finally agreed on after the witness had examined the sufficiency of the security offered. "Jefferson was then planting in Coahoma county, Mississippi, on the Burke Place, and the money was loaned him to aid him in carrying on his planting operations there." The plaintiff also offered in evidence two letters written by J. T. Jefferson,—one to F. W. Dunton, dated January 12, 1889, and one to B. J. Martin, dated January 18th, in both of which he referred to the debt evidenced by the notes and mortgage. In the former he said: "* * * If your claim is not paid in full by November or December, 1889, I will ask no further favor. I will pay the interest, up to December 1st, that is due on the two notes." In the letter of January 18th he referred to the "notes due Mr. Dunton." and said, "If Dunton will give me fifty days, I will fix up one of his notes." E. L. McGowan testified as follows: "Jefferson came to me some time in July, 1891, and informed me of the advertisements of sales, and that Col. Gantt had advised him that said notes and trust deeds were void. and that as we had a trust deed on same lands, next in order to theirs, to secure notes and accounts and indorsements, we should enjoin the sale, and have these mortgages canceled. He and I went to the office of McDowell & McGowan, where he went over the facts relating to said prior mortgages and our trust deed on the lands. Judge McDowell advised the filing of a bill, which we agreed to. McDowell & Jefferson advised the employment of D. A. Scott, of Friarpoint, Miss., to assist in the cases. We accordingly employed Scott in the cases, and paid him $500; Jefferson stating that Col. Gantt was his regular attorney, and would assist in the cases. Jefferson at first suggested and desired the bills filed in our name, but, after a full discussion of the matter with Scott, it was determined to file the bills in the name of Jefferson: but it was well understood by Jefferson, and so declared by him, that the suit was instituted principally for our benefit; and we paid all the expenses, amounting to over $1,200." W. W. McDowell testified to an interview with J. T. Jefferson and E. L. McGowan that led to the filing of the bill in Jefferson's name in Mississippi. The suggestion was first made to file the bill in the name of the two firms,—Toof, McGowan & Co. and Brooks, Neely & Co.,—but it was finally concluded to file it in Jefferson's name. "We were not employed by Jefferson, or paid any fee by him. * * * S. H. Brooks and H. M. Neely are members of the firm of Brooks, Neely & Co. I went to see them at the request of Jefferson, who had, I believe, talked to them about going on the bond, as J. C. Neely, as he claimed, had agreed to make the bond, but was out of the city. When I called on them, I told them that it was important to make the bond speedily, so as to prevent the sales of the land, and that Jefferson said he had arranged with J. C. Neely to make the bonds, or something to that effect, but that he was absent. I explained the probable risks they would incur. They said but little, but said they would consult about the matter and decide, and did sign the bond, but I don't remember to have seen him further on the subject; and, while I went there at the request of Jefferson, I felt that I was representing my client in my efforts to secure bond, and in that sense I was representing Toof, McGowan & Co., although I would not have gone if Jefferson had not requested me. McGowan may have been present when Jefferson made the request, and I think he knew that I was going." D. A. Scott, witness for defendants, testified "that in the litigation he did not represent Brooks, Neely & Co. Witness was employed by Jefferson many months before his services were engaged by Toof. McGowan & Co., but always considered himself as Jefferson's attorney, incidentally representing Toof, McGowan & Co."

The foregoing is substantially all the evidence. Thereupon, on motion of

the defendants, the court gave a peremptory instruction to the jury, instructing them to find for the defendants,—the court holding that the notes and trust deeds under which the plaintiff claimed title to the lands in controversy were a New York contract, and absolutely void, under the laws of that state; to the giving of which instruction the plaintiff at the time excepted. The instruction of the court to find for the defendants is assigned as error.

T. M. Miller, J. H. Watson, and G. T. Fitzhugh, for plaintiff in error. D. A. Scott and H. D. McKellar, for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the facts, delivered the opinion of the court.

Both parties to the suit deraign title from J. T. Jefferson. The title of the plaintiff in error is deraigned from a deed of trust executed prior to the dates of the deeds of trust from which the defendants in error derive their title. The title of the former therefore must prevail, unless it is shown to be defective and inoperative. The argument of the case was devoted in part to the question as to what law, on the subject of usury, governed the contracts between Jefferson, the mortgagor and maker of the notes, and the trustee and the payee of the notes; that is, by what law were the notes and mortgage to be construed? The Mississippi law authorized the charge of interest at the rate of 10 per cent. per annum; the Tennessee law, only 6 per cent.; the New York statutes, only 6 per cent.; and the statutes of the latter state made void, for usury, any securities bearing a higher rate of interest. The view we take of the case presented by the record makes it unnecessary, in our opinion, to decide that question. If it be conceded that the deed of trust executed by Jefferson to Wheeler in 1886 was subject to the defense of usury, either under the laws of New York or Tennessee, does it follow that the infirmity in the mortgage will be fatal to the deed made on foreclosure? An injunction suit had been brought by Jefferson, or in Jefferson's name, against F. W. Dunton and B. J. Martin, the substituted trustee, to avoid the mortgage, for usury. The chancery court of Coahoma county, Miss., in which the bill was filed, had decided that $4,909.06 was due on the mortgage, after reducing the interest to conform to the laws of Tennessee. The court dissolved the injunction, so as to permit a foreclosure for the sum found to be due. An appeal was taken to the supreme court of Mississippi, which affirmed the decree of the chancery court. The trustee then sold the real estate, in conformity to the power contained in the deed of trust. His action had the judicial sanction of the court of last resort in the state where the land to be sold was situated. At the sale the plaintiff in error, George S. Edgell, became the purchaser, at $5,000, paid the purchase money, and received a conveyance from the trustee. The mortgage has performed its function. By the sale the sum adjudged due on the notes is paid. The original contract has been executed. This is not a suit to collect the mortgage or notes. Both are paid. This case is ejectment, and involves only the right of possession, which is here dependent on the legal title to the land. A party who was a stranger to the original transaction has intervened. The purchaser at the sale, who has paid

the purchase money, thereby discharging the mortgage, is before the court, and his rights are to be considered.

We are confronted with this question: After the adjudication in the Mississippi courts, under the circumstances shown in the record, and the foreclosure of the mortgage, the purchase of the property, and payment of the purchase money, and the conveyance by the trustee, can the question of usury in the mortgage be raised in the action of ejectment to defeat the legal title of the purchaser?

Foreclosure under the power of sale given in a mortgage or deed of trust cuts off the equity of redemption as fully as foreclosure by decree of court. Mortgage Co. v. Sewell, 92 Ala. 168, 9 South. 143.

The case of Jackson v. Henry, 10 Johns. 185, was an action of ejectment. The defendant claimed as purchaser at a mortgage sale made under a power given in the mortgage to the mortgagee. The plaintiff proved that the mortgage was given for a loan on which usurious interest had been reserved. After citing several English cases, Kent, C. J., who delivered the opinion of the court, said:

"The principles of public policy, and the security of titles, are deeply concerned in the protection of such a purchaser. If the purchase was to be defeated by the usury in the original contract, it would be difficult to set bounds to the mischief of the precedent, or to say in what sequel of transactions, or through what course of successive alienations, and for what time short of that in the statute of limitations, the antecedent defect was to be decreed cured or overlooked, so as to give quiet to the title of the bona fide purchaser. The inconvenience to title would be alarming and enormous. The law has always had a regard to derivative title, when fairly procured; and though it may be true, as an abstract principle, that a derivative title cannot be better than that from which it was derived, yet there are many necessary exceptions to the operation of this principle."

When this decision was rendered the New York statute against usury declared the usurious security "utterly void," but the court refused to apply the statute to defeat the purchaser at the mortgage sale, who was sued in ejectment.

In Mumford v. Trust Co., 4 N. Y. 463, an effort was made, in chancery, to invalidate a mortgage, for usury, which had been foreclosed. The court said:

"The mortgage is satisfied. It has performed its office. There is the end of it. New rights have been acquired by these proceedings, and a new relation created between these parties, which neither is at liberty to depart from without the consent of the other."

The court held that the parties, after foreclosure, were estopped from setting up usury.

In Elliott v. Wood, 53 Barb. 306, Jackson v. Henry, supra, is quoted approvingly, and the principle applied to mortgaged "property situated out of the state" of New York. The court held that:

"If the mortgagor allows the property to be sold under a foreclosure, without taking the necessary steps to avoid the mortgage, an innocent purchaser cannot be affected by the alleged usury."

In Tyler v. Insurance Co., 108 Ill. 58, the court said:

"If the maker of a deed of trust, and his subsequent incumbrancer, permit a sale of the premises to be made by the trustee for the principal, and usury included, they will be estopped from afterwards insisting on usury to defeat the sale. By permitting the sale they will be regarded as assenting to it, and the payment of the usury."

In the case of De Wolf v. Johnson, 10 Wheat. 368, the question of usury was considered. "It was not contended that in the immediate contract on which the bill was founded there was any usurious taint belonging to that transaction itself. The ground taken was usury in a transaction, anterior by two years, out of which the mortgage in question drew its origin, and from which the usurious taint was supposed to be transplanted. * * *" In considering this question, and in holding that usury could not be set up, the court said:

"Again, it is perfectly established that the plea of usury, at least so far as landed security is concerned, is personal and peculiar; and however a third person, having interest in land, may be affected incidentally by a usurious contract, he cannot take advantage of the usury."

The following cases, in principle, sustain the same view,—that the foreclosure cuts off the consideration of the question of usury: Perkins v. Conant, 29 Ill. 184; Carter v. Moses, 39 Ill. 539; Bell v. Fergus (Ark.) 18 S. W. 931.

Mr. Jones, in his work on Mortgages, quotes Chief Justice Kent's opinion in Jackson v. Henry, supra, approvingly. "Under usury laws which make void securities affected with usury, the question arises, what limit is there to the effect of the statute? Does a foreclosure of the mortgage, and a sale of the mortgaged property to a third person, terminate the right of the mortgagor to avail himself of the usury, or do the consequences still attend the property, so that the purchaser's title may be rendered void?" Having asked these questions, the learned author adopts Lord Kenyon's and Chief Justice Kent's answers to them,—that the infirmity of usury cannot be raised against the purchaser after foreclosure. 1 Jones, Mortg. (5th Ed.) § 646, citing Cuthbert v. Haley, 8 Term R. 390; Jackson v. Henry, 10 Johns. 185.

If a mortgage may be attacked for usury after foreclosure, when would the right to make such attack be barred? It would produce too much uncertainty of title to say that the attack could be made at any time within the statute of limitations applicable to real actions. If the attack be permitted at all after foreclosure, it would logically have no other limit. Such a rule would encourage unjust litigation, promote perjury, and lessen the salable value of real estate where a mortgage foreclosure was noted on its abstract of title. To avoid these consequences, it must be held, on principle and authority, that when a mortgage on real estate, not usurious on its face by the lex loci rei sitæ, is foreclosed by decree of court or by a power of sale, the conveyance to the purchaser cannot be subject to attack for usury in the mortgage.

It is immaterial whether the deed of trust, and the notes secured by it, are to be treated as Mississippi, New York, or Tennessee contracts. In any event, on the record before us, usury, if it existed in the original transaction, would not affect the title of the plaintiff in error.

The circuit court erred in instructing the jury to find for the defendants. On the case made in the record, the peremptory instruction might well have been given in favor of the plaintiff. The judgment is reversed, and the cause remanded for a new trial.